125 So.2d 146

**Mrs. Theresa Virginia HAMMOND, Widow of John Louis POLIZZI,**

v.

**Frederick H. LOTZ, Sr. and Miss Edna Louise Lotz.**

No. 44259.

Dec. 12, 1960.

Puneky & Barrios, New Orleans, for plaintiff and appellant.

William J. Daly, New Orleans, for defendants and appellees.

FOURNET, Chief Justice.

This is a suit to have a boundary line "finally fixed in the manner prescribed by law" between the adjoining properties of plaintiff Mrs. J. L. (Theresa Hammond) Polizzi and the defendants Frederick H. Lotz, Sr., and Miss Edna Louise Lotz,[1] and to compel the defendants to remove the existing fence to a dividing line "as same be found and fixed" by the surveyor to be appointed by the Court; the matter is here on appeal from a judgment of the District Court declaring unconstitutional a certain paragraph of Article 4502 ("Party Fences") of the New Orleans Building Code "insofar

---

1. The properties lie within the square bounded by St. Mary, Prytania, Felicity and Coliseum Streets in the City of New Orleans. The plaintiff is the owner of the parcel bearing municipal numbers 1409–1413 St. Mary Street, measuring 32 feet, 11 inches and 6 lines front on St. Mary by a depth of approximately 121 feet, being a portion of original Lot No. 26, while the defendants own the property bearing municipal number 1415 St. Mary, being a portion designated "B" of said Lot No. 26 and measuring approximately 31 feet front by a depth of approximately 121 feet, as shown by a sketch dated June 17, 1867, drawn by J. A. d'Hemencourt, Surveyor, on file in the City Engineer's office.

as it provides that a portion of property one and a half inches in width belonging to one neighbor shall be placed on the other side of the partition fence, and in the possession of the adjoining neighbor;" hence our jurisdiction of this appeal.

██ The allegations of the petition are that the present partition fence is in need of repair or replacement; that for more than a year prior to filing suit the plaintiff attempted to erect a fence as authorized by Article 4502 of the New Orleans Building Code, that she secured a permit and purchased material, but that defendant Mr. Lotz refused his consent unless the three posts at the rear end of the fence be moved from his to plaintiff's side (the remaining twelve posts being already on plaintiff's side), and that since the boundary line has never been established either judicially or by agreement between the owners, a survey is necessary; the prayer is that a surveyor be appointed by the Court and "if such survey should show that the fence is encroaching upon petitioner's line, there be judgment ordering the defendants to remove to the said boundary line the said fence * * *." The defendants denied the necessity for fixing the boundary, averring that a fixed and visible division boundary, the wooden fence, had separated the properties of plaintiff and defendants and their authors in title (father and mother) for more than forty years, having been fixed by mutual agreement between prior owners; that said

fence had been repaired and replaced as necessity demanded and always on the same line, with the exception that some seventeen years before filing of the instant suit the front portion had been curved slightly onto defendants' property from its former location on the boundary line so as to be stabilized by attachment to an iron post of defendants' front fence, and also that within the preceding ten years the three posts at the extreme rear of said fence had been placed on defendants' side, but with the express understanding between plaintiff and defendants' father that the posts would be removed to their original and still discernible location on plaintiff's side whenever defendants demanded same, but that such demand was now refused; and defendants specially pleaded the prescription of ten, twenty and thirty years.

The Court-appointed surveyor, Mr. E. L. Eustis, testified that he found the fence almost exactly on the line; that the deviation was so slight as to be almost negligible, consisting of an encroachment at St. Mary Street of two and a half inches upon defendants' property, dwindling to one inch some twenty-three feet back, and then at a point twenty-nine feet from the front the fence crossed the boundary and encroached one inch on plaintiff's property but almost immediately got back on the line, and that for the remaining length it followed the line exactly, meeting a shed which formed the common dividing line at the extreme rear

of the lots. Mr. Eustis explained that "the property line, as we understand it, from a surveying point of view, is a line which passes between the posts which are approximately on eight foot centers, and the boards which are nailed to these posts;" that in practice the posts abut the line exactly, the boards are nailed flush with the posts, "so one property would have to have the posts and the other property would have to have the boards;" and this he has considered proper placement of the posts and boards with relation to the boundary in all the surveys he has made for the past forty-eight years. It was only after the plaintiff's case had been completed, and during testimony of the defendant Lotz, that as a result of off-the-record discussion the Trial Judge for the first time became aware of the fact that plaintiff's counsel was contending the New Orleans Building Code relative to party fences (Art. 4502) requires that the 4″ width of the posts and the 1″ boards be added, the result divided by two, and the boundary fixed on that medial line with the boards nailed to one side of the posts. Mr. Lotz complained that if the boundary line split the five inches, with the boards nailed to the posts from his side (the posts are already on plaintiff's side) "she would give up nothing and gain sixteen hundred and sixty-three square inches and I would be giving up thirty-three hundred and thirty;" whereupon the Judge commented: "In other words, the old way was much fairer with the line running between the boards and the posts; because if you push it [the boundary line] over, then it is true, she [plaintiff] would be getting some of his [defendant's] property. I see what you mean." He then observed: "Maybe the Ordinance is unconstitutional, by making you give up some of your property to your neighbor." Counsel for defendants thereupon filed a plea that Article 4502 of the Building Code was not intended to be retroactive in application, and alternatively, that it is unconstitutional as in violation of the due process clauses of the State and United States Constitutions, Const. art. 1, § 2; U.S.Const. Amend. 14. The judgment of the Court, after approving and homologating the proces verbal of the Surveyor and ordering the boundary line fixed in accordance therewith and with the accompanying sketch, and after overruling (because inappropriate or unsupported) the pleas of prescription, decreed that plaintiff have the right to remove to the boundary line the portion of the fence now encroaching on her property and on defendants' as shown by the proces verbal and sketch; declared unconstitutional (in language quoted in the first paragraph of this opinion) a portion of Article 4502 of the Building Code; and further decreed "that defendants be enjoined from interfering with plaintiff's making necessary repairs to and realigning the partition fence in question, provided the boards are placed on the prop-

erty of defendants, and the posts on the property of plaintiff, with the dividing line passing between the boards and the posts; \* \* \*," the costs of suit, including the fee of the surveyor, to be borne equally by the parties. From that judgment the plaintiff has appealed.

Article 4502 of the New Orleans Building Code (effective February 1, 1949) which recites that everyone has a right to compel his neighbor to contribute one half the cost of making and repairing "a substantial and suitable party fence," declares: "A substantial and suitable party fence is considered to be a fence of 1 inch by 12 inches feather edged boards nailed horizontally, 7 boards high across pine posts 4 inches by

6 inches, not more than 8 feet apart, set 3 feet in the ground, with one-half of the total thickness of the fence on each side of the party line." [2]

■ We fail to perceive any meaning implicit in the above language which would warrant a ruling that the provision violates constitutional guarantees, nor can we agree with the interpretation placed on the words by counsel for plaintiff and adopted by the Trial Judge as a basis for his finding of unconstitutionality. We are fortified in this conclusion by a review of the development of the ordinances of the city dealing with contribution for party fences, as authorized by the Revised Civil Code of 1870.[3] The

2. A more extensive excerpt of the pertinent provisions of Art. 4502 follows: "Everyone has a right to compel his neighbor to contribute to the making and repairing of the fences held in common by which their houses, yards and gardens are separated; \* \* \*.

"Whenever the owner of a lot shall desire to enclose same by a fence, he shall give notice of such desire in writing to the owner or owners of the adjoining lots, describing in said notice the premises to be enclosed and the character of the fence to be constructed. Upon refusal to join in the building of such party fence and after the expiration of 10 days from the delivery of said notice, if such owner or owners shall still neglect to join petitioner in building, petitioner may proceed to build a fence as described in the petition and shall be entitled to recover from such owner or owners one-half of the cost of a substantial and suitable party fence, \* \* \*.

"A substantial and suitable party fence is considered to be a fence of 1 inch by 12 inches feather edged boards nailed

horizontally, 7 boards high across pine posts 4 inches by 6 inches, not more than 8 feet apart, set 3 feet in the ground, with one-half of the total thickness of the fence on each side of the party line.

"Whenever any party fence shall need repairing, 10 days' notice may be given by any party interested in such party fence to the other parties interested in the same, to join in making such repairs, and on failure of said parties to join in making such repairs, the party performing the same shall be entitled to recover from such other owner one-half the cost of such repair.

"Nothing set forth in this Article shall be construed as to prevent the owners of such lots to be divided to agree on any other type party fence provided all other requirements of this Chapter be met \* \* \*."

3. That provision, as incorporated in the 1870 Code, had appeared without significant change since the Code of 1808, and declares: "Every one has a right to compel his neighbor within the cities and towns, and their suburbs, of this State,

first ordinance, adopted by the Council in 1870,[4] provided the same right of recovery under the same circumstances and procedure as recited in the present-day ordinance quoted in footnote 2 except that the words used to describe the fence are merely "a good, substantial and suitable fence" with no mention of posts or boards. In 1890 there was inserted, by amendment, the definition of "a good, substantial and suitable fence," that definition being the same as it is today,[5] except for the final clause which no longer appears: "and the party building it to have the right to place the posts upon his neighbor's side." This was clearly complementary to the language of the Civil Code (footnote 3) where, in paragraph 2 of Article 686 it is said: "and the presumption shall be that the inclosure was made by him on whose side it is nailed * * *." Subsequent ordinances dealing with party fences are not pertinent to this review [6] and the above regulations for the erection of a party fence for which contribution could be demanded of the neighbor were unchanged from 1890 until adoption of the New Orleans Building Code, effective February 1, 1949, containing Article 4502 here involved. We are not apprised of a single instance since adoption of the said Building Code where, due to the language of Article 4502, a claim was made that fences are no longer to be constructed in the customary manner, i. e., with the posts on one property abutting the boards on the other, and testimony given during the trial of this case reveals there has been no change in this common practice of the locality within the memory of the witnesses. Nor are we prepared to say that

to contribute to the making and repairing of the fences held in common, by which their houses, yards and gardens are separated, which shall be made in the manner in which is or may be prescribed by the regulations of the police on this subject.

"And if one of the proprietors has been alone at the expense of making the inclosures held in common, he may compel the other to make it in his turn, and the presumption shall be that the inclosure was made by him on whose side it is nailed, unless there exists a voucher or proof to the contrary." (Article 686.)

4. No. 199, Administration Series, adopted June 14, 1870.

5. "Resolved, That the good, substantial and suitable party fence required by Ordinance No. 199, A.S., page 537 Jew- ells' Digest, shall consist of feather-edged rough pine boards one inch thick with the usual width and length, nailed horizontally across pine posts four inches thick by six inches wide and not more than eight feet apart, driven three feet in the ground; the fence to be seven feet in height, and the party building it to have the right to place the posts upon his neighbor's side." Ordinance No. 4433, Council Series, adopted April 15, 1890; Flynn's Digest, The Laws and Ordinances of the City of New Orleans (1896), Art. 682, page 301.

6. The provisions of Ordinance No. 10474, C.C.S., of June 1, 1928, not pertinent to the matter at issue, were later repealed by No. 13925, C.C.S., of February 7, 1933, and the latter ordinance re-enacted Ordinances No. 199 A.S. and No. 4433 C.S. — see footnote 5, supra.

the wording of the ordinance under consideration necessarily requires any change in the manner of locating such a fence on the boundary. Under established rules of statutory construction it is recognized that in determining the meaning of a particular statute, and in order to ascertain the uniform and consistent purpose of the legislative body, resort may be had to the established policy as disclosed by a general course of legislation, and the lawmaking body is presumed not to have intended to disregard or modify long settled policy unless the purpose to do so is declared in certain and unequivocal terms.[7]

 But disregarding those rules, yet bearing in mind that laws are presumed to be valid and constitutional if reasonably susceptible of interpretation free from constitutional inhibition, and examining with meticulous care the words "total thickness of the fence," we have no hesitancy in rejecting the interpretation advocated by the plaintiff. The common and usually accepted meaning of the word "fence" is an enclosing structure, a visible or tangible obstruction to part off or shut in property, an enclosing barrier intended to prevent intrusion from without,[8] and in that context the boards, and not the posts, are the "fence"

as the term is used in the ordinance, since it is the boards that form the barrier; from which it follows that the "total thickness of the fence" spoken of in the ordinance is a one inch board. As a practical matter, the placing of half of a one inch board on each side of a boundary line is difficult or even impossible of exact accomplishment, and in the instant case would mean moving the posts a half inch. We think that substantial compliance only could have been intended by the City Fathers.

██ It therefore appears that a proper disposition of this case would have been a dismissal of plaintiff's suit at her cost. Defense counsel so submits, but having failed to appeal or answer the appeal, he is not entitled to prevail since under the well-settled jurisprudence this Court, in reviewing a judgment of a lower court at the instance of one party, will not amend the judgment to appellant's prejudice and to the advantage of a party who has sought no remedy; however, availing ourselves of the provisions of R.S. 13:4444,[9] since the equities are on the side of the defendant, we shall tax all costs against plaintiff.

For the reasons assigned it is hereby ordered, adjudged and decreed that the por-

---

7. 82 C.J.S. Verbo Statutes § 366, pp. 808, 809, especially authorities in footnotes 69 and 70.

8. 16A Words and Phrases, Fence, pp. 3 et seq.

9. "All appellate courts may tax the costs of the lower or appellate court, or any part thereof, against any party to the suit, as in its judgment may be deemed equitable." (R.S. 13:4444). Brown v. Green, 133 La. 725, 63 So. 303; Nabors v. Fortson et al., 144 La. 469, 80 So. 661.

tion of the judgment of the District Court which decrees "and that Art. 4502 of the Building Code of the City of New Orleans be declared unconstitutional insofar as it provides that a portion of property one and one-half inches in width belonging to one neighbor shall be placed on the other side of the partition fence, and in the possession of the adjoining neighbor," is reversed and set aside; and that in all other respects the judgment appealed from is affirmed. It is further decreed that all costs of the suit, including those in the District Court, be paid by the plaintiff-appellant.

125 So.2d 151