217 So.2d 400

William EVERHARDT et al.

v.

CITY OF NEW ORLEANS, Victor H. Schiro,
and Joseph Giarrusso.

No. 49257.

Dec. 16, 1968.

Rehearing Denied Jan. 20, 1969.

Alvin J. Liska, City Atty., Beuker F. Amann, Ernest L. Salatich, Maurice Friedman, Asst. City Attys., for applicants.

Jack P. F. Gremillion, Atty. Gen., Norman L. Sisson, Robert J. Jones, Robert L. Roshto, New Orleans, Marvin C. Grodsky, Russell Leach, Bricker, Evatt, Barton & Eckler, Columbus, Ohio, for amicus curiae.

William F. Wessel, Michael O. Miranne, New Orleans, for respondents.

FOURNET, Chief Justice.

This is a class action instituted by plaintiffs,[1] respondents herein, seeking to enjoin the defendants,[2] relators herein, from enforcing Sections 39–288.1(c),[3] 38–288.2, 38– 231(f) of Ordinance No. 3526 M.C.S., amending Ordinance 828 M.C.S., the Code of the City of New Orleans, and the matter is now before us on a writ of certiorari granted to the application of relators, 252 La. 269, 210 So.2d 508, to review the judgment of the Court of Appeal for the Fourth Circuit, reversing the judgment of the district court maintaining the constitutionality of the ordinance and declaring the same to be constitutional. 208 So.2d 423.

The court of appeal, relying on the general principle of law of the police power of the state to promote the public convenience or the general prosperity as well as those to promote public safety, health and morals, observed, "The only function of the helmet requirement we are able to discern is to minimize the extent of injury to the individual cyclist involved in an accident, and not to contribute to the safety of the motoring public at large. Thus we are concerned with a limitation of the personal liberty of the individual motorcyclist.", and concluded, "The helmet ordinance constitutes a denial of due process of law to plaintiffs in that it deprives them of an individual liberty without promoting a purpose

1. Plaintiffs are William Everhardt, Arnold Eckland, Russell E. Garrett, Dorothy Hayes as Tutrix of Edward Hayes, and Greater New Orleans Motorcycle Association.

2. Defendants are the City of New Orleans, Victor H. Schiro, Mayor, and Joseph Giarrusso, Superintendent of Police.

3. "Headgear: No person shall operate or ride upon any motorcycle or any motor driven cycle unless such person is equipped with and wearing on the head, a safety helmet of the type and design manufactured for use by the operators of such vehicles, which shall be properly secured with a chin-strap while the vehicle is in motion. All safety helmets shall consist of lining, padding and chin strap. * * *."

beneficial to the public at large." The court also held, "The ordinance * * * denies plaintiffs the equal protection of laws in that it imposes undue restriction on one class of motoring public without any salutary effect to the public at large."

■ In order to properly resolve this case we think it first necessary to consider the well recognized rule of law that an ordinance, like any act of the legislature, is presumed to be constitutional. As aptly observed by this court in Schwegmann Bros. v. Louisiana A. B. C. Board, 216 La. 148, 43 So.2d 248, "It is elementary that an act of the Legislature is presumed to be legal, and the judiciary is without right to declare it unconstitutional unless that is manifest. This rule is strictly observed in cases involving laws enacted in the exercise of the state's police power. * * *" See, Banjavich v. Louisiana Licensing Bd. for Marine Divers, 237 La. 467, 111 So.2d 505; Polizzi v. Lotz, 240 La. 734, 125 So.2d 146. Furthermore, the legislation is to be upheld if any set of facts can be conceived from which it could be concluded that there is a reasonable relationship between the law and the public good and safety. City of Shreveport v. Cunningham, 190 La. 481, 182 So. 649; City of New Orleans v. Le Blanc, 139

La. 113, 71 So. 248; Rast v. Van Deman & Lewis Co., 240 U.S. 342, 36 S.Ct. 370, 10 L.Ed. 679. Consequently, the one who attacks the constitutionality of a statute has the burden of establishing by clear and cogent evidence that the statute under attack is unconstitutional. Reynolds v. Louisiana Bd. of Alcoholic Beverage Control, 248 La. 639, 181 So.2d 377; Kansas City Southern Railway Co. v. Reily, 242 La. 235, 135 So.2d 915; Interstate Oil Pipe Line Co. v. Guilbeau, 217 La. 160, 46 So.2d 113.

■ The City of New Orleans under its home rule charter granted it by the State was delegated all of the police power necessary for the protection of life, safety, health, and morals of the citizens as well as to promote public convenience and the general prosperity; and clearly, under this comes the power to regulate traffic on the highways and streets. Moreover, driving upon public streets and highways is a privilege and not a right; and, in the field of public safety the council should have more latitude in regulating individual conduct. See, People v. Schmidt, 54 Misc.2d 702, 283 N.Y.S.2d 290.

The ordinance in question is similar to the state statute, R.S. 32:190,[4] which was

4. R.S. 32:190—"No person shall operate or ride upon any motorcycle or any motor driven cycle unless said person is equipped with and is wearing on the head a safety helmet of the type and design manufactured for use by operators of such ve-

hicles, which shall be secured properly with a chin strap while the vehicle is in motion. All such safety helmets shall consist of lining, padding, visor and chin strap and shall meet such other specifications as shall be established by the Di-

adopted by the Legislature in the 1968 Regular Session to conform to the Highway Safety Program standards promulgated by the Secretary of the United States Department of Transportation wherein it is provided insofar as pertinent here: "Each State shall have a motorcycle safety program * *. 1. The program shall provide as a minimum that: * * * B. Each motorcycle operator wear an approved safety helmet and eye protection when he is operating his vehicle on streets and highways."

Our attention has been called to three decisions of courts of other states that have passed upon similar type of helmet laws. The first is a decision of the Court of Appeals of Michigan, Division 2, dated April 30, 1968 in the matter of American Motorcycle Association v. Davids, 158 N.W.2d 72, in which the helmet law of that state was held unconstitutional; second is a decision of the Supreme Court of Rhode Island, dated May 8, 1968, in the matter of State ex rel. Colvin v. Lombardi, 241 A.2d 625, in which the helmet law of Rhode Island was held constitutional; and the third is a decision of the Supreme Judicial Court of Massachusetts, dated June 5, 1968, in the matter of Commonwealth v. Howie, 238 N. E.2d 373, in which a similar statute was held as a valid exercise of the police power.

In the latter case the Supreme Judicial Court of Massachusetts in upholding the statute, General Laws c. 90, § 7, requiring "every person operating or riding a motorcycle to wear protective headgear conforming with certain minimum standards" declared, "It lies within the power of the Legislature to adopt reasonable measures for the promotion of safety upon public ways in the interests of motorcyclists and others who may use them. * * * The act of the Legislature bears a real and substantial relation to the public health and general welfare and is thus a valid exercise of the police power. * * * As contended by the Commonwealth, "[t]he legislation is reasonable, applies to all equally, and is directly related to highway safety," commenting, "[a] recent Michigan decision to the contrary is not persuasive. On this general subject we find ourselves in agreement with State ex rel. Colvin v. Lombardi, * * *.""

The Supreme Court of Rhode Island in the Lombardi case declared:

"* * * It is our unqualified judgment that the purpose sought to be achieved by requiring cyclists to wear protective headgear clearly qualified as a proper subject for legislation.

rector of Public Safety. The director may contact with the American Association of Motor Vehicle Administrators for conduct-

ing of testing procedures and may approve for use those helmets submitted by manufacturers of motorcycle helmets and ap-

"The defendant's contention to the contrary presupposes that protection for the motorcycle operator was the sole motivation for the general assembly's action. Even if this were so, we are not persuaded that the legislature is powerless to prohibit individuals from pursuing a course of conduct which could conceivably result in their becoming public charges. Be that as it may, however, the requirement of protective headgear for the exposed operator bears a reasonable relationship to highway safety generally. It does not tax the intellect to comprehend that loose stones on the highway kicked up by passing vehicles, or fallen objects such as windblown tree branches, against which the operator of a closed vehicle has some protection, could so affect the operator of a motorcycle as to cause him momentarily to lose control and thus become a menace to other vehicles on the highways.

"It is fundamental that an act of the legislature commands judicial approval if on any reasonable view such act is designed and intended to protect the public health, safety and morals. * * *"

▆ We have no hesitancy in concluding that Ordinance No. 3536 M.C.S., Sec. 39–288.1(c) is clearly within the police power of the city in regulating traffic on its streets and there is a reasonable relationship between the ordinance and the public good and safety. It promotes safety upon the streets and highways in the interest of the motorcyclist as well as all others who may use them, applying to all cyclists equally.

The argument of counsel for plaintiffs that the ordinance violates the equal protection clause in that it singles out one portion of motor vehicle operators, is untenable. Counsel obviously fails to recognize that motorcycles are in a different category from other motor vehicles, constituting a greater traffic hazard on public streets than travel by automobile, truck or other enclosed vehicle, both in respect to the driver thereof as well as to operators of the other vehicles. The operator of a motorcycle has considerably less body protection than operators of enclosed vehicles and is more susceptible to be injured and cause other injuries. Thus, there is a reasonable basis for the requirement of headgear to motorcycle drivers as opposed to such requirements for automobile drivers or golf cart operators as contended by respondent.

Finally, the contention is made that the ordinance is vague and indefinite in that it does not set forth guidelines and specifications as to the type of helmet to be worn,

proved by said association. If the director finds that any helmet so approved meets the specifications fixed by or under authority of this section he shall issue notice of approval of the helmet."

claiming that there are many types manufactured.

Our appreciation of the evidence in the record shows that while there are several competitive firms in the manufacture of motorcycle helmets there are only two types manufactured, i. e., a full coverage type worn in competition and a half shell helmet for non-competition riding. Unquestionably, the council in adopting the ordinance that the motorcycle driver is to wear "a safety helmet of the type and design manufactured for use by the operators of such vehicles" were cognizant of the type manufactured for that purpose. Appropriate here we think is the observation of the Supreme Court of Rhode Island in the Lombardi case in resolving a similar issue, to-wit: " * * * the word 'helmet' becomes a word of art when it identifies with a specific use. Thus, police, firemen, or football helmets conform to known and approved standards and are not open to uncertainty of meaning or use."

For the reasons assigned the judgment of the Court of Appeal is reversed and the judgment of the district court is affirmed.

SUMMERS, J., dissents and joins in the reasons for dissent assigned by BARHAM, J.

HAMITER, Justice (dissenting).

I am in accord with the result reached by the Court of Appeal, it being that the Motorcycle Helmet Ordinance of the City of New Orleans is unconstitutional, null and void.

BARHAM, Justice (dissenting).

I recognize the principles of law enunciated in the majority opinion that legislation is presumed to be constitutional, that the City of New Orleans under its police power has authority to regulate traffic on its public ways and streets in order to promote public safety, and that the city may make reasonable classifications in the drafting of ordinances to accomplish this purpose. I conclude, however, as did the Court of Appeal, that the only purpose which this ordinance serves is to minimize the injuries of operators and riders of motorcycles if they are involved in accidents. It is not designed to prevent accidents and is not, therefore, a public safety measure.

The conclusions which the majority has made to supply constitutionality to this ordinance are not supported by the sparse record, so it must be assumed that these conclusions are in the nature of judicial notice. The majority finds that the ordinance promotes *safety* in the interest of the motorcyclist as well as others. I cannot determine how the wearing of a helmet by a motorcyclist can be conducive to the safer operation of his motorcycle. He is as accident-prone with as without the helmet in regard both to himself and to other mo-

torists. Certainly an unhelmeted motorcyclist presents no increased danger to the rest of the motoring public. The most that can be said to support the insistence upon the wearing of the helmets is my original conclusion that the helmet may mitigate the cyclist's injury after the fact, after the accident, after the breach of safety.

The majority also says that motorcycles constitute a greater traffic hazard "both in respect to the driver thereof as well as to operators of the other vehicles". On the contrary, it would appear that the size and weight of motorcycles make them as to others less hazardous than larger and more formidable vehicles.

Finally it is reasoned that because of less body protection motorcyclists are "more susceptible to be injured and cause other injuries". Only the assumption that they are more susceptible to injury has validity in my mind and then not to a certainty. The assumption that the motorcyclist's lack of body protection makes other highway users more likely to be injured appears to be without foundation or logic. I can find no basis for concluding that helmeting or even armouring our motorcyclists would cause fewer injuries to others.

The ordinance is simply an attempt to force one class of persons to mitigate or minimize their own injuries resulting from accident without regard to causation of the accident or general highway safety. Deducibly and logically the ordinance will force one class of individuals to protect themselves from their own harmful acts or omissions or from the harmful acts or omissions of others. Generally the police power cannot be exploited to require the individual to protect himself from the wrongful acts of others, and only in extraordinary circumstances may the governing authority interfere with, or prescribe regulations for, the activity of individuals which is not harmful to others.

The right of one to use his property as he chooses so long as his use does no harm to others is a natural liberty. Even when this right is exercised upon public thoroughfares, police regulation of it must serve an overriding public purpose. Police power is commensurate with, but *does not exceed,* the duty to provide for the *real* needs of the people in matters of health, safety, and general welfare. The deprivation of individual liberty by legislation under the police power must accomplish in an appropriate manner the particular public necessity. It is not apparent on the face of this ordinance that the general public or those not included in this particular class will derive any benefit from its enforcement.

Reasonable classification is necessary and sometimes desirable. Motorcyclists are in fact, and may be in fact, placed in a distinct class so as to regulate their use of the streets and highways when the classifi-

cation is for the safety, convenience, and general welfare of the public. However, this ordinance arbitrarily and unreasonably deprives the motorcyclist of individual liberty when the only purpose served is his self-protection and when other more numerous users of the streets who are similarly situated are not required to utilize devices and equipment which serve only to minimize their own injuries. This ordinance strikes at the heart of individual liberty—that is, the right to act and to use one's property when that action and that use harm no one else. In the face of the ordinance's obvious deprivation of the constitutional right of free action and use of property of a small and arbitrarily selected group there must be some showing of an overriding service to the public. Not even speculation totally outside the record, the briefs, and the arguments before us can possibly sustain a conclusion that a public purpose is being accomplished by this ordinance.

The ordinance is no doubt humane and even eminently sensible, but it is nonetheless unconstitutional. That our citizens in almost unanimity think it foolhardy to ride a motorcycle without a protective helmet is not alone a criterion for defining the non-use of the helmet a crime. Although laws have been validly enacted to protect the legally incompetent from their own acts, some of the persons who disregard the most elementary forms of self-preservation are, unfortunately, not legal incompetents, but only fools; and

"\* \* \* a fool must follow his natural bent

"(Even as you and I!)"

Observing no *public* harm in the acts sought to be controlled and no *public* good as a derivative of the ordinance, I conclude that the city has exceeded its police power and that the ordinance is unconstitutional. I therefore respectfully dissent.

Rehearing denied.

HAMITER, SUMMERS and BARHAM, JJ., dissent from the refusal of a rehearing.