274 So.2d 757 (1973)
HI-LO OIL COMPANY et al., Plaintiffs-Appellants,
v.
CITY OF CROWLEY, Louisiana, et al., Defendants-Appellees.
No. 4085.
Court of Appeal of Louisiana, Third Circuit.
March 12, 1973.
Rehearing Denied April 2, 1973.
Writ Refused May 24, 1973.
*758 Davidson, Meaux, Onebane & Donohoe, by Robert L. Cabes, Lafayette, for defendants-appellants.
Joseph S. Gueno, Jr., Crowley, for plaintiffs-appellees.
Pugh, Buatt, Landry & Pugh, by Lawrence G. Pugh, Jr., Crowley, for defendants-appellees.
Before FRUGE, HOOD and DOMENGEAUX, JJ.
HOOD, Judge.
This is an action for a declaratory judgment instituted by Hi-Lo Oil Company, Phil-A-Sak, Inc., and Shop-Rite, Inc., against City of Crowley, Louisiana. Plaintiffs seek a judgment decreeing Ordinance No. 922 of the City of Crowley to be unconstitutional. Judgment was rendered by the trial court in favor of defendant, City of Crowley, declaring the ordinance to be constitutional, *759 both on its face and in its application to the petitioners. Plaintiffs appealed.
This case was consolidated for trial and appeal with two other related cases, both of which are injunction suits instituted by the City of Crowley. In each of those cases the city sought a judgment prohibiting the defendant from violating the provisions of Ordinance No. 922, and in each suit the trial court rendered judgment in favor of the City of Crowley, granting the city the injunctive relief which it sought. The defendant in each such suit appealed. City of Crowley, Louisiana, v. Pic-A-Pak Grocery Corporation, La.App., 274 So.2d 767; and City of Crowley, Louisiana v. Shop-Rite, Inc., La.App., 274 So.2d 768.
The central issue presented in these consolidated cases is whether Ordinance No. 922 of the City of Crowley is unconstitutional, in that it allegedly constitutes an unreasonable, unnecessary and unconstitutional exercise of the police power vested in the city.
The evidence shows that on December 11, 1967, the City of Crowley issued a building permit to Marbane Construction Company for the construction of "self-service gas pumps" at a grocery store in Crowley operated by Phil-A-Sak, Inc. On January 30, 1968, two other permits were issued by the City of Crowley to Hi-Lo Oil Company for the construction of self-service gas pumps at two grocery store locations of Shop-Rite, Inc., in the City of Crowley. In due course the parties involved constructed self-service gas pumps at the above mentioned locations, at a total cost of approximately $20,000.00.
These self-service gasoline pumps, and the equipment incidental thereto, were owned by Hi-Lo Oil Company, and they were installed and operated under lease agreements between Hi-Lo Oil Company and the other two plaintiffs. In each case the lease contract provided that it would become void and of no force and effect if the operation of remote control gasoline dispensing devices should thereafter be prohibited or if the necessary permits should be refused.
At the time Hi-Lo Oil Company installed the above mentioned gasoline pumps, there existed no law or ordinance of the City of Crowley relating to the operation of self-service gas pumps. On May 14, 1968, however, the Board of Aldermen of the City of Crowley enacted Ordinance No. 882, which adopted by reference the "Fire Prevention Code, Abbreviated Edition, 1965," which was recommended by the American Insurance Association. A printed copy of that code is in the record. There is a dispute between plaintiffs and defendant as to whether the city, in adopting the Fire Prevention Code, intended to adopt a 1966 amendment to Section 78 of that code which relates to the dispensing of gasoline, and because of that dispute a question is presented as to whether the code at that time authorized or prohibited the dispensing of gasoline by persons other than by service station attendants. In any event, plaintiffs continued to sell gasoline through their self-service gasoline pumps, allowing customers to operate the pumps, for several months after that ordinance was adopted.
The operation of these self-service stations continued without incident until August 28, 1968, when a customer, Robert Stakes, was injured at one of the Shop-Rite self-service locations. Mr. Stakes was dispensing gas into his own automobile at that location, while smoking a cigarette, and a flash fire occurred. The fire caused Stakes to sustain burns on his head, eyes, cheek and neck, for which he was hospitalized and treated for a brief period of time. No property damage resulted from this blaze, and apparently no claim was made against the self-service station insurers, although the medical bills incurred by Mr. Stakes were paid by an unnamed insurance company.
After this incident occurred, Mr. J. Wesley Andrus, Fire Chief of the City of Crowley, recommended to the Board of Aldermen *760 that self-service gasoline pumps be prohibited in the city. The Board of Aldermen of the City of Crowley thereupon adopted Ordinance No. 888 on September 10, 1968, which amended Section 78(d) of the Fire Prevention Code relating to the dispensing of gasoline. The purpose of Ordinance No. 888 obviously was to prohibit the dispensing of gasoline into the fuel tank of a vehicle, or into a container, by anyone other than a competent attendant. That ordinance contained another conflicting provision, however, and it was decreed to be unconstitutionally vague by judgment of the City Court of Crowley, rendered on January 18, 1971.
On February 9, 1971, the Board of Aldermen of the City of Crowley adopted Ordinance No. 922, which was designed to overcome the deficiencies of Ordinance No. 888. The pertinent provisions of Ordinance No. 922 read as follows:
"d. Delivery Nozzles.
"(1) Hose nozzle valves for dispensing Class I liquids, including gasoline, into a fuel tank or into a container shall be manually held open during the dispensing operation except as provided in section 78d(2).
"(2) On any service station dispenser accessible to the public an approved automatic closing type nozzle with latch-open device shall be permitted only when all dispensing of Class I liquids is to be done by the service station attendant.
"(3) Class I liquids, including gasoline, shall be dispensed only by a competent attendant, either the owner or an employee of the business establishment dispensing such liquid, which attendant shall operate both the dispensing unit and the delivery nozzle.

"e. Special Type Dispensers.
"The installation or use of special dispensing devices such as, but not limited to, coin operated, card operated and remote preset types, for the dispensing of Class I liquids and, particularly, gasoline, which is here defined as a Class I liquid, are prohibited, within the corporate limits of the City of Crowley, unless a competent attendant, either the owner or an employee of the business establishment dispensing such liquid, does and performs the dispensing of such liquid." (Emphasis added).
All parties apparently agree that this ordinance, if found to be constitutional, prohibits the dispensing of gasoline by anyone other than the owner or an employee of the business establishment where the liquid is sold.
The instant suit was instituted on March 17, 1971, and the two companion suits were instituted on March 19, 1971. We have already noted that in each suit judgment was rendered in favor of the City of Crowley, upholding the constitutionality of Ordinance No. 922, and that the sole issue presented in these consolidated cases relates to the constitutionality of that ordinance.
The petitioners allege that the ordinance is invalid because it violates the United States Constitution in the following respects:
"(a) That the ordinance is in violation of the prohibitions of the Constitution, against the impairment of contracts.
"(b) That the ordinance constitutes a restraint of trade, in violation of the Commerce Clause of the Constitution.
"(c) That the ordinance, in its application, constitutes a taking of petitioner's property without due process of law, contrary to the Fourteenth Amendment of the United States Constitution.
"(d) That the ordinance violates the equal protection clause of the Fourteenth Amendment to the Constitution."
Plaintiffs point out that the City of Crowley issued building permits authorizing them to construct self-service gas pumps, and then, after leases had been entered into and a substantial sum of money *761 had been invested in such construction, it adopted an ordinance prohibiting self-service operations. They contend that when the ordinance was adopted, it was known to the City of Crowley that only one company, Hi-Lo Oil Company, was conducting such operations with the specific permission of the city. It is argued that the prohibiting of such operations was unnecessary for the protection of the safety of the people of the community, and that the ordinance is invalid because it impaired contracts which had been entered into by plaintiffs.
The law is settled that the owner of city property holds that property at all times subject to the lawful exercise of the police power of that municipality, and that an ordinance adopted by the city in the legitimate exercise of its police power will not be decreed to be void simply because it restricts the use of some improvements which the owner had lawfully constructed on the property prior to the adoption of that ordinance. See Jacobson v. Commonwealth of Massachusetts, 197 U.S. 11, 25 S.Ct. 358, 49 L.Ed. 643; City of Shreveport v. Kansas City, S. & G. Ry. Co., 167 La. 771, 120 So. 290 (1929); City of Shreveport v. Kansas City Southern Ry. Co., 193 La. 277, 190 So. 404 (1939); State ex rel. Fitzmaurice v. Clay, 208 La. 443, 23 So.2d 177 (1945); Ransome v. Police Jury of Parish of Jefferson, 216 La. 994, 45 So.2d 601 (1950); Hadacheck v. Sebastian, 239 U.S. 394, 36 S.Ct. 143, 60 L.Ed. 348; Chicago, B. & Q. R. Co. v. State of Nebraska, 170 U.S. 57, 18 S.Ct. 513, 42 L.Ed. 948 (1898); Hutchinson v. Valdosta, 227 U.S. 303, 33 S.Ct. 290, 57 L.Ed. 520 (1913); Queenside Hills Realty Co. v. Saxl, 328 U.S. 80, 66 S.Ct. 850, 90 L.Ed. 1096 (1946).
In Board of Barber Examiners of Louisiana v. Parker, 190 La. 214, 182 So. 485 (1938), our Supreme Court said:
"Police power is inherent in the state. Under that power the state may enact laws to protect and preserve social order, to restrict and punish crime, to preserve the public peace, to safeguard and protect the health and morals of the people, even though the effect of such laws is to strike down private contracts, to deprive the citizen of his liberty to contract and to take from him or destroy his property. But the legislature is prohibited from enacting such laws except on proper occasion and for adequate reasons. If the reasons are not adequate, such legislation violates the due process clauses of the Constitutions." (Emphasis added).
The United States Supreme Court said in Queenside Hills Realty Company v. Saxl, supra, that:
"But in no case does the owner of property acquire immunity against exercise of the police power because he constructed it in full compliance with the existing laws."
We conclude that the fact that plaintiffs had constructed self-service gasoline pumps, pursuant to building permits issued prior to the adoption of Ordinance No. 922, did not immunize them from the regulations imposed by that ordinance. We find no merit, therefore, to plaintiffs' argument that the ordinance is invalid because it impaired contracts previously entered into by them.
Plaintiffs contend further that Ordinance No. 922 is unconstitutional because it constitutes an unreasonable and arbitrary exercise of the police power of the city. They argue that the ordinance imposes unnecessary restrictions on the conduct of an otherwise lawful occupation, and that it is not calculated reasonably to accomplish the end desired. They contend that the "objective of safety to the public" could have been achieved by proper enforcement of the existing Fire Prevention Code, and that it constituted an abuse of its police power for the city to enact a prohibitory ordinance which goes beyond the necessities of the situation. Their position is that the ordinance is invalid because it violates *762 the commerce clause of Article One, and the due process of law and equal protection clauses of the Fourteenth Amendment of the constitution of the United States.
The defendant city contends that the ordinance is designed to protect the public health and safety by prohibiting the dispensing of gasoline by anyone other than a competent attendant, and that the ordinance constitutes the legitimate exercise of the police power of the city.
In determining the constitutionality of this ordinance, we recognize the established rule of law that a city ordinance, like an act of the legislature, is presumed to be constitutional, and that the party who attacks it has the burden of establishing by clear and cogent evidence that the ordinance is unconstitutional. This rule is strictly observed in cases involving ordinances enacted in the exercise of the city's police power. Everhardt v. City of New Orleans, 253 La. 285, 217 So.2d 400 (1969); Hunter v. City of Shreveport, 216 So.2d 140 (La.App. 2 Cir. 1968); Parish Council, Etc. v. Louisiana Highway, Etc., 131 So.2d 272 (La.App. 1 Cir. 1961); City of Crowley Firemen v. City of Crowley, 264 So.2d 368 (La.App. 3 Cir. 1972).
The ordinance should be upheld if any set of facts can be conceived from which it could be concluded that there is a reasonable relationship between its provisions and the public health, safety, morals or general welfare. Everhardt v. City of New Orleans, supra. In order to justify a holding that the legislative action is arbitrary, unreasonable or unnecessary, it must be shown that there was no room for a reasonable difference of opinion, and that there was no substantial evidence upon which the legislative action could have been justified. Torrance v. Caddo Parish Police Jury, 119 So.2d 617 (La.App. 2 Cir. 1960); Archer v. City of Shreveport, 85 So.2d 337 (La.App. 2 Cir. 1956).
The court should not set up its judgment against that of the city authorities as to the wisdom of the method adopted to accomplish a legitimate object, unless the method employed by the city is clearly unreasonable. The method provided in the ordinance need not necessarily be the best. The courts thus will not invalidate an ordinance, which has been duly enacted and is within the municipal competency, unless its invalidity appears on its face or is established by admissible extrinsic evidence. Gibson v. City of Baton Rouge, 161 La. 637, 109 So. 339 (1926); Hunter v. City of Shreveport, supra; City of Shreveport v. Conrad, 212 La. 737, 33 So.2d 503 (1947).
In order that a city ordinance may be sustained as the legitimate exercise of the city's police power, however, the legislation must have for its object the prevention of some offense or manifest evil, or the preservation of the public health, safety, morals or general welfare. The exercise by the city of its police power must have a substantial basis if it is to be upheld. The purported exercise of that power cannot be made a mere pretext for legislation that does not fall within it. There must be some substantial connection between the purpose of the regulation and the provisions of it, and the provisions must in some appropriate manner be designed for and tend toward the accomplishment of the legitimate objects for which the power is exercised. City of New Orleans, v. Southern Auto Wreckers, 193 La. 895, 192 So. 523 (1939); Schwegmann Bros. v. Louisiana Board, Etc., 216 La. 148, 43 So.2d 248 (1949); City of Lake Charles v. Hasha, 238 La. 636, 116 So.2d 277 (1959); Arkansas Louisiana Gas Company v. Louisiana Department of Highways, 104 So.2d 204 (La.App. 2 Cir. 1958).
The test of whether the ordinance is a valid exercise of the police power of the city in the constitutional sense depends on whether, under all of the existing circumstances, the regulation is reasonable, and whether it is designed to accomplish a purpose properly falling within the scope of the city's police power. Reynolds v.
*763 Louisiana Board of Alcoholic Beverage Control, 249 La. 127, 185 So.2d 794 (1965); State v. Birdsell, 235 La. 396, 104 So.2d 148 (1958); City of Baton Rouge v. Rebowe, 226 La. 186, 75 So.2d 239 (1954).
We have examined Ordinance No. 922 in the light of these rules, and have concluded that it is constitutionally valid.
Gasoline is a highly inflammable and explosive substance. Because of the potential hazards to health and safety occasioned by the storage, dispensing and use of that liquid, we think the mode and manner of storing, dispensing and using it are subject to reasonable regulation under the police power of the appropriate governing authorities.
The evidence in the instant suit shows that the self-service gasoline pumps of Hi-Lo were installed in front of stores in Crowley which are commonly referred to as "convenience stores." No repair service or mechanical work was provided by those stores, and no petroleum products other than gasoline were sold. No attendants were stationed at the pumps, and customers were allowed to handle the hose and nozzle of the pumps in transferring gasoline from the pumps into the tanks of their cars. The only employee in each store who was charged with duties relating to the sale of gasoline was the cashier, who was required to check out grocery customers and perform the other regular duties of a cashier, as well as to supervise the dispensing of gasoline. The cashier remained in the store at all times, but he was stationed near a window through which he could observe gasoline customers as they served themselves. Connected to each pump was a remote control electronic device, mounted on a console, and containing a button or switch which enabled the operator to turn off all power to the pumps and stop the flow of gasoline from any pump into a car. A console of that type was located in each store, within easy reach of the cashier.
Within a few months after the self-service operations were started in Crowley a flash fire occurred at one of the installations where a customer, Mr. Stakes, was dispensing gasoline into his car, while smoking a cigarette. The cashier in the store testified that he was aware of the fact that Stakes was putting gasoline into his car just before the flash fire occurred, but that he was "real busy" and did not actually look at Stakes or see him smoking or dispensing the gasoline. The cashier, in fact, did not know that there was a fire at the gasoline pump until either someone "hollered in the store," or "Mr. Stakes came up to the window and told us he was on fire."
After that incident occurred, the Fire Chief recommended to the Board of Aldermen of the City of Crowley that an ordinance be adopted prohibiting the dispensing of gasoline by anyone other than a competent attendant.
The Fire Chief, and several members of the Board of Aldermen, testified that following that flash fire they made special efforts to observe the dispensing of gasoline at these self-service locations, and that they noted several incidents or circumstances which convinced them that additional regulations for dispensing gasoline were needed. Most of these witnesses observed, for instance, that on some occasions lines of customers were waiting inside the store to be checked out by the cashier, while from two to five cars were at the pumps getting gasoline. They noticed that the cashier was too busy checking out grocery customers to notice the manner in which gasoline was being dispensed, and that he, in fact, did not exercise any effective supervision over the dispensing of gasoline.
The testimony shows, and some of the witnesses called by plaintiffs concede, that if a panel truck or a similar vehicle stopped at a pump located near the cashier's window, it blocked the cashier's view of all other vehicles receiving gasoline from other pumps.
*764 Several of the witnesses testified that they saw gasoline being dispensed by children. An alderman stated that on one occasion he saw some children, five or six years of age, putting gasoline into a car at one of these pumps, while the parents of the children were inside the store. Another alderman testified that he saw children 10 to 12 years of age, and over, putting gasoline into cars "every day" at a self-service store which he passed in route to and from his home. The mayor observed a little girl, nine or ten years of age, and other children 12 or 13 years of age dispensing gasoline at these locations while a number of people were at the checkout counter in the store. He stated that the "employee's attention was directed entirely to checking out the customers who were in the store, not to what was going on outside." One alderman saw a nine year old girl putting gasoline into a car while "her father was in the car and the car was running at the time."
Several witnesses stated that they had seen customers dispensing gasoline into cars while the motors of the cars were running. Others testified that they had observed customers smoking cigarettes while putting gasoline into cars at these stations. An alderman saw gasoline self-service customers "run the tank over once or twice," and he noticed that no one hosed the area down to get rid of the spilled gasoline in those instances as they do in a regular service station. The evidence shows that the danger of fire or explosion is greatly increased by the existence of any of the above mentioned circumstances.
We think the evidence establishes that the danger of fire or explosion is greater when gasoline is dispensed by customers rather than by regularly employed attendants. The purpose of Ordinance No. 922 was to preserve and protect the health and safety of the public by removing that added danger. We find that there was a substantial basis for such a regulation, that there is a definite connection between the purpose of the ordinance and the provisions of it, and that the ordinance is calculated to accomplish the purpose which it was intended to serve.
Plaintiffs concede that the City of Crowley has the authority to enforce "some regulations" relating to the dispensing of gasoline, but they argue that the regulations imposed by Ordinance No. 922 are unreasonable, arbitrary and unnecessary. They reason that the ordinance is unnecessary because the "proper enforcement of the original Fire Prevention Code would have accomplished the objective of safety to the public." In support of their contention that the ordinance was arbitrary and capricious, they argue that it was "specifically aimed at one group of individuals, namely Hi-Lo Oil Company and its Lessors, who were well known by the City to be the only individuals who would be affected by it," and that two members of the Board of Aldermen who voted for the ordinance had "a direct economic interest in the outcome."
Plaintiffs do not regard Ordinance No. 922 as merely regulating the dispensing of gasoline. The gist of their argument is that the selling of gasoline by the use of self-service pumps is a type of business which is separate and distinct from that of a regular service station. They point out that the reason for using self-service devices in dispensing gasoline is to enable the small independent gasoline jobber to compete economically with other gasoline dealers. They argue that the operation of a self-service gasoline station is an otherwise lawful occupation, and that Ordinance No. 922 effectively and unnecessarily prohibits them from engaging in that business.
We view Ordinance No. 922 as one which regulates the dispensing of gasoline, rather than one which prohibits the operation of a specific type of business. The regulation that gasoline be dispensed only by a competent attendant applies to all places of business where gasoline is sold. It does not prohibit plaintiffs from selling gasoline at their "convenience stores." *765 Plaintiffs, in fact, have continued to sell gasoline at those locations, through the same pumps, although since the last ordinance was enacted they have arranged for an attendant to do the actual dispensing of that liquid. We realize that the requirement that gasoline be dispensed only by an attendant imposes a greater economic burden on plaintiffs than existed before the ordinance was passed, but the city is not barred from exercising its police power for legitimate purposes simply because of these increased economic burdens. The evidence does not support plaintiffs' assertion that the ordinance was aimed solely at one group of individuals.
We are not convinced that the regulations provided in Ordinance No. 922 are unnecessary. If we assume that the original Fire Prevention Code contained adequate regulations to insure safety in dispensing gasoline, then the evidence shows that those regulations were not being enforced. We think the members of the Board of Aldermen were justified in concluding that the necessary safety regulations would not and could not be properly enforced without the additional restrictions provided in the ordinance.
We have not considered the question of whether the method adopted by the ordinance is the best method of protecting the public safety, because it is not the function of the court to substitute its judgment in that respect for that of the Board of Aldermen. We find, however, that the facts established at the trial are sufficient to warrant the exercise of the city's police power by adopting some more effective regulations relating to the dispensing of gasoline to protect the public health and safety. We do not find the regulations imposed by this ordinance to be unreasonable.
Plaintiffs point out that the ordinance requires that gasoline be dispensed by a "competent attendant," but it does not specify the qualifications the attendant must have in order to be competent. They argue that the ordinance thus is not calculated to preserve the safety of the public, because it provides no assurance that the attendant will be any more competent than is the customer.
We find no merit to this argument. If the term "competent attendant" is given no other meaning than that the attendant must be of sound mind and of lawful age, then we think the ordinance will give some additional protection to the public. It would eliminate the dispensing of gasoline by children or by mentally incompetents, and it would insure that at least one employee of the business establishment would be present and would be giving his undivided attention to the dispensing of gasoline in each automobile.
We have been referred to no case in Louisiana where the exact issues presented here were determined. A somewhat similar issue was presented, however, in City of Shreveport v. Nelson, 165 La. 229, 115 So. 469 (1928). There, the defendant was charged with violating a city ordinance which, in effect, prohibited the dispensing of gasoline from a tank wagon or truck, carrying more than five gallons, to an automobile. The defendant moved to quash the charge on the ground that the ordinance was "unreasonable, unfair and arbitrary." Substantially the same arguments were presented there as have been presented in this suit. Our Supreme Court, after noting "the highly inflammable characteristics of gasoline," held that the ordinance was not constitutionally objectionable as being unreasonable, unfair or arbitrary. The constitutionality of that ordinance thus was upheld.
In Starkey v. City of Longmont, 91 Colo. 387, 15 P.2d 620 (1932), Starkey was convicted of violating a city ordinance by operating a "self-serve" or "slot-machine" gasoline filling station without a license. The issue presented was whether a city ordinance which provided that "no license should issue for a station having no attendant in charge" was reasonable. The Supreme Court of Colorado held that such an ordinance was reasonable and was constitutional. The court said "certainly a *766 city council may hold that an attendant is indispensable."
Similar ordinances were upheld as being constitutional in Hawkins v. City of Red Cloud, 123 Neb. 487, 243 N.W. 431 (1932); Reingold v. Harper, 6 N.J. 182, 78 A.2d 54 (1950); and in McCardle v. City of Jackson, 260 So.2d 482 (Miss.1972).
In Reingold v. Harper, supra, the Supreme Court of New Jersey said:
". . . Prohibition of the self-service device as a means of distribution of this highly flammable commodity is permissible if the Legislature may reasonably conceive that method to be dangerous to the public health and safety..."
* * * * * *
"Tested by these criteria, the measure taken here cannot be deemed arbitrary or capricious. Gasoline is flammable and dangerous in use. It was ever so. The principles of physical science are not variables, changing from time to time. There can be no doubt that self-service of this class augments the hazard attending the handling of gasoline. In reality, the measure is but a regulation of management and conduct to safeguard persons and property against known perils of the business. The Legislature has the function and the responsibility of determining what is needed in the interest of the common safety. The burden of proof of a deviation from its constitutional sphere has not been sustained."
In McCardle v. City of Jackson, supra, the ordinance provided that "the installation and use of coin-operated, card-operated, key-operated, and remote pre-set type dispensing devices for flammable or combustible liquids, is prohibited." The Supreme Court of Mississippi observed that "There is no doubt that self-service increases the hazard of handling gasoline." In concluding that the ordinance did not violate the constitutional prohibition against the impairment of obligations, or the due process of law and equal protection clauses of the federal and state constitutions, the court said:
"The ordinance is a valid and constitutional regulation of the management and conduct of fueling stations to safeguard persons and property against known perils of explosions and fires in the use of flammable substances. There is a reasonable relationship between the ordinance and the public good and safety, and the City of Jackson was authorized to enact it in the exercise of its police power."
We think the reasons assigned in the cited cases are applicable here. We have been referred to no case where an ordinance similar to the one which is being considered here was declared to be unconstitutional.
Our conclusion is that Ordinance No. 922 of the City of Crowley is not constitutionally objectionable for any of the reasons assigned by plaintiffs. We believe that the regulations provided in that ordinance are reasonable, and that they constitute the legitimate exercise of the police power of the City of Crowley for the protection of the public health and safety. The evidence produced at the trial shows that the members of the Board of Aldermen were justified in concluding that the regulations imposed by this ordinance were necessary. We thus find no error in the judgment of the trial court decreeing the ordinance to be constitutional.
For the reasons herein set out, the judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiffs-appellants.
Affirmed.