Dear Senator Irons:
This office is in receipt of your request for an opinion of the Attorney General in regard Act 404 of 1999 (Senate Bill 86) to amend and reenact R.S. 32:190 so as to exempt any person 18 years or older from having to wear a helmet while operating or riding upon a motorcycle. The Act further provides in part for the following:
 Any person eighteen years of age or older as provided in Subsection A(1) who chooses not to wear a helmet shall be covered by a health insurance policy with medical benefits of at least ten thousand dollars for bodily injuries and shall provide proof of such policy to any law enforcement officer upon the request of such officer.
You indicate certain insurance companies have raised questions concerning this provision insofar as what type of insurance policy this law requires. The author of Bill 86 feels that the intent was to require medical coverage as part of the motor vehicle insurance carried on the motorcycle, whereas some companies do not provide such an option. Accordingly, there is a question as to whether individual health insurance policies would fulfill the requirement of the provisions.
While the author of the Bill has stated that the intent of the provision was to require medical coverage as a part of the motor vehicle insurance carried on the motorcycle, we note that the provision specifically requires coverage "by a health insurance policy with medical benefits of at least $10,000 for bodily injury."
We note the following definitions in the insurance code under R.S. 22:6. Paragraph 2 provides as follows:
 (a) Health and accident. Insurance against bodily injury, disablement, or death by accident and against disablement resulting from sickness and every insurance appertaining thereto.
 (b)(i) Limited benefit. Health and accident insurance policy designed, advertised, and marketed to supplement major medical insurance that includes accident-only, the Civilian Health and Medical Program of the Uniformed Services (CHAMPUS), dental, disability income, fixed indemnity, long-term care, Medicare supplement, specified disease, vision, and any other health and accident insurance, other than basic hospital expense, basic medical surgical expense, or other major medical insurance.
 (ii) Limited benefit insurance shall include the Louisiana Basic Health Insurance Plan Pilot Program (LA Health).
Paragraph 3 then states the following:
 Vehicle. Insurance against loss or damage to any land vehicle or aircraft or any draft or riding animal or to property while contained therein or thereon or being loaded or unloaded therein or therefrom, and against any loss or liability resulting from or incident to ownership, maintenance, or use of any such vehicle or aircraft or animal.
 Insurance against accidental death or accidental injury to individuals including the named insured while in, entering, alighting from, adjusting, repairing, cranking, or caused by being struck by a vehicle, aircraft, or draft or riding animal, if such insurance is issued as part of insurance on the vehicle, aircraft or riding animal, shall be deemed to be vehicle insurance.
We can understand the queries as to what type of insurance policy is required by the new legislation inasmuch as the wording of the statute says "health insurance" but further refers to coverage of at least $10,000 for bodily injury which is consistent with coverage for medical payments for the insured under a motor vehicle insurance policy. Moreover, we particularly note that both the definitions for "health and accident" insurance and "vehicle" insurance in the Insurance Code are for insurance against bodily injury by accident although the definition for "health and accident" also includes disablement from sickness, and vehicle insurance includes accidental death or injury to individuals "including the named insured" "if such insurance is issued as part of insurance on the vehicle".
We feel we must be guided by the provisions of C.C. Art. 10 that provides when the law is susceptible of different meanings, it is to be interpreted as meaning that which best conforms to the purpose of the law. Similarly, C.C. Art. 12 provides as follows:
 When the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole.
In determining the purpose of the law we find the observations in Everhardt v. City of New Orleans, 253 La. 285,217 So.2d 400 (1968), by the majority of the Louisiana Supreme Court pertinent wherein the court upheld the constitutionality of a city ordinance requiring a motorcyclist wear a safety helmet. The court stated that the operator of a motorcycle has considerably less body protection than operators of enclosed vehicles and is more susceptible to be injured, and there was a reasonable relationship between the ordinance and the public good and safety.
This is consistent with some observations in the Senate Committee on Transportation, Highways and Public Works in consideration of Senate Bill 86 wherein various witnesses testified to the likelihood of injuries in motorcycle accidents, especially head injuries.
While we can find nothing that definitively settles a specific type of insurance the cyclist without a helmet must have, we feel the most reasonable conclusion is medical payment coverage connected with the vehicle. However, this conclusion does not mean that other policies would not fulfill the law, and this is especially true in light of vehicle policies which may specifically exclude coverage of a motorcycle or deny coverage to the extent required by the statute in question. We are in agreement with the report in the Baton Rouge Sunday Advocate on August 8, 1999 stating, "The law stipulates that anyone not wearing a helmet must have $10,000 worth of medical insurance. It can come either from a medical insurance policy or through the biker's motorcycle liability coverage, according to the law."
We find it should also be observed that the requirement in the statute for insurance coverage further provides that the person who chooses not to wear the helmet "shall furnish proof of such policy to any law enforcement officer upon the request of such officer." The statute does not specify in what form this proof is to take, but we must conclude it will have to be sufficient to establish to the officer that there is insurance coverage in compliance with the law as is required with automobile insurance. Because of the lack of clarity in the statute, we believe the citizens and the law enforcement officers in the state would be served if legislative clarification would be sought in the future on this subject.
We hope this sufficiently answers your inquiry, but if we can be of further assistance, do not hesitate to contact us.
Sincerely yours,
 RICHARD P. IEYOUB Attorney General
 By: BARBARA B. RUTLEDGE
Assistant Attorney General
BBR