353 So.2d 995 (1977)
CITY OF SHREVEPORT, Plaintiff-Appellant,
v.
David P. KAUFMAN, Defendant-Appellee.
No. 60102.
Supreme Court of Louisiana.
December 19, 1977.
Rehearing Denied January 27, 1978.
John Gallagher, City Atty., Lawrence K. McCollum, Charles R. Scott, Asst. City Attys., Shreveport, for plaintiff-appellant.
Jack H. Kaplan, Gamm, Greenberg & Kaplan, Shreveport, for defendant-appellee.
TATE, Justice.
This case raises important issues concerning the effect of the Louisiana Constitution of 1974 upon local-subdivision home rule charters. Specifically, we must decide *996 whether the 1950 charter of the City of Shreveport, in the light of the 1974 constitution, may validly grant to that municipality the authority to punish conduct as gambling which is not included within the state legislature's definition of the crime.
On an appeal from city court, the district court reversed defendant's conviction for a 1976 violation of a city gambling ordinance. The court held the ordinance unconstitutional. The city appeals the judgment declaring the ordinance unconstitutional directly to this court. La.Const. of 1974, Art. 5, Section 5(D)(1).

I.
Before examining the precise issue before us, we deem it advisable to summarize the historical and constitutional context in which it arises.
By a 1948 amendment of the 1921 constitution, the people of Shreveport were granted the right to draft, vote upon, and adopt a charter. La.Const. of 1921, Art. 14, Section 37 (1948).[1] Pursuant to this authority, the Shreveport City Charter was adopted and became effective on November 14, 1950.
However, the constitutional provision (Article 14, Section 37) authorizing Shreveport home rule failed to specify particular delegations of authority, unlike the counterpart provisions authorizing home rule charters in East Baton Rouge Parish, La.Const. of 1921, Art. 14, Section 3(a) (1946), and in Jefferson Parish, Art. 14, Section 3(c) (1956). As a consequence, in distinguishing decisions relating to the latter home rule charters, we held that, while their constitutional authorizations granted the local governments of these parishes certain powers, the 1921 constitution as amended withheld these powers from Shreveport by its failure expressly to delegate them. Bradford v. City of Shreveport, 305 So.2d 487 (La.1974).
The 1974 constitution's Article 6 sets forth only broad general rules regulating local government. They replace the intricate detail of the 1921 constitution's Article 14, which included, for instance, specific authorizations for each local subdivision empowered to adopt a home rule charter.
Thus, Article 6, Section 4 of the new constitution provides for continuation of home rule charters and powers then in effect, "except as inconsistent with this constitution." It also provides that these local home-rule governments, if their charter permits, "also shall have the right to powers and functions granted to other local governmental subdivisions."[2] The powers of "other" (i. e., non-home rule) local governments, if approved by their electorate, extend to all those "necessary, requisite, or proper for the management of its affairs, not denied by its charter or by general state law." Art. 6, Section 7(A).[3]
The new constitution's approach thus represents a broad change in the philosophy of local government as formerly expressed by the 1921 document. Rather than granting local governmental subdivisions only such powers as were expressly granted to them by the constitution or the legislature, the *997 new constitution grants them broad residual powers. If authorized by their home rule charter (or by vote of the people, if no home rule charter is adopted), the local governments are authorized to exercise any power necessary, requisite or proper for local governmentproviding that such powers are not (a) inconsistent with the 1974 constitution or (b) denied them by general legislation. Art. 6, Sections 4, 5(E), 7(A).
As the idea was subsequently articulated by a leading delegate in the constitutional convention, Kean, "Local Government and Home Rule," 21 Loy.L.Rev. 63, 66 (1975): "Thus, the concept embodied in Article VI completely reversed the theory of local government as a `creature of the state' with only delegated authority. The old strict constructionist theory is also replaced by one which recognizes that so long as the Legislature does not deny a power, local government possesses it, thereby rendering any further enabling legislation unnecessary."

II.
Section 2.04(d) of the Shreveport City Charter, adopted by vote of the people of that city, authorizes the enactment of an ordinance prohibiting gambling.[4] For present purposes, we will assume no general statute prohibits Shreveport from adopting an ordinance regulating gambling. Nevertheless, the ordinance, as adopted, is inconsistent with Article 12, Section 6, of the 1974 constitution, for reasons to be stated.
This provision reads: "Neither the state nor any of its political subdivisions shall conduct a lottery. Gambling shall be defined by and suppressed by the legislature." (Italics ours.)
The legislature has defined gambling in R.S. 14:90: "Gambling is the intentional conducting, or directly assisting the conducting, as a business, of any game, contest, lottery, or contrivance whereby a person risks the loss of anything of value in order to realize a profit." (Italics ours.)
To the extent that a local government seeks to punish as "gambling" conduct which falls outside the definition enacted by the legislature (now La.R.S. 14:90), it attempts to exercise authority which is inconsistent with Article 12, Section 6 of the Constitution.
As (solely) authorized by the constitution, the legislature has defined certain conduct as gambling when conducted "as a business." A local government may be authorized to punish the offense of gambling, as thus defined by the legislature; it may not, however, similarly punish non-business conduct as "gambling", since the legislature alone is given the constitutional power to define what conduct shall be suppressed as constituting gambling.
The district court correctly held the Shreveport gambling ordinance unconstitutional, in the light of the principles stated, because: "* * * by legislative definition, the prohibited activities must be conducted as a business. The city ordinance at issue includes the definition, but goes far beyond that and prohibits [social] activities which would not be classified as a `business.'"

Decree
Accordingly, for the reasons stated, we affirm the judgment of the district court holding Section 21-30 of the Ordinances of the City of Shreveport to be unconstitutional, and reversing the defendant's city-court conviction for violation thereof. The costs of these proceedings are assessed against the plaintiff-appellant, insofar as permitted by law.
AFFIRMED.
*998 SANDERS, C. J., dissents with written reasons.
SUMMERS, J., dissents for the reasons assigned by the Chief Justice.
SANDERS, Chief Justice (dissenting).
Shreveport is a Home Rule City.[1] In its Home Rule Charter, it is granted the authority to enact ordinances "necessary or desirable to promote the general welfare. . . safety, health, good order . . . and morals of its inhabitants." Specifically, the Charter authorizes the City to make regulations for the prevention or prohibition of gambling for money or property, by any method or device.
By virtue of the Home Rule Charter, there can be no doubt that Shreveport had the power to define and regulate gambling under the 1921 Constitution. City of New Orleans v. Stone, 221 La. 133, 58 So.2d 736, 738 (1952).
In the City of New Orleans v. Stone, supra, dealing with a similar Home Rule Charter, this Court stated:
"It is seen from the foregoing that the city of New Orleans has been invested with sweeping police power, entitling it to legislate on all matters affecting the community irrespective of whether the Legislature has legislated thereon and subject only to the single proviso that the ordinances of the city shall not directly conflict with the provisions of any state laws on the same matter. Thus, since it appears that the city is given the power to adopt ordinances for the suppression of lotteries, even though the Legislature itself has passed general and special laws concerning the same subject, it is difficult to perceive that the city ordinance is amenable to a charge that it is in direct conflict with the state law unless the latter can be regarded as covering `the entire subject matter.'"
The case of City of Alexandria v. LaCombe, 220 La. 618, 57 So.2d 206 (1952), on which defendant relies, pertained only to "Lawrason Act" cities and was inapplicable to cities with Home Rule Charters. See City of New Orleans v. Stone, supra. Moreover, that decision was legislatively overruled by Act No. 327 of 1952. See LSA-R.S. 33:4851.1.
I conclude, therefore, that the gambling ordinance of the City of Shreveport was valid when adopted under the 1921 Constitution.
The key question, then, is whether the 1974 Constitution divested Shreveport of power which it had under the former constitution. I think not.
As the majority notes, Article 6, Section 4 of the 1974 Constitution continues in effect all existing home rule charters. Significantly, it further provides:

"Except as inconsistent with this constitution, each local governmental subdivision which has adopted such a home rule charter or plan of government shall retain the powers, functions, and duties in effect when this constitution is adopted. If its charter permits, each of them also shall have the right to powers and functions granted to other local governmental subdivisions." [Emphasis added.]
As a basis of inconsistency, the majority cites Article 12, § 6, providing:
"Neither the state nor any of its political subdivisions shall conduct a lottery. Gambling shall be defined by and suppressed by the legislature." [Emphasis added.]
This section makes it mandatory for the Legislature to define and suppress gambling. I find no language, however, to indicate that the power to define gambling is granted exclusively to the Legislature.
In fact, the section appears to be only an editorial revision of Article 19, Section 8 of the 1921 Constitution, which admittedly did not bar municipal definition and suppression of gambling. The 1921 section provided in pertinent part:
"Gambling is a vice and the Legislature shall pass laws to suppress it."
*999 Although there is some inconclusive language in the debates, the weight of the delegates views indicate that the rephrasing was intended to make no change in the powers of municipalities to define and regulate gambling.
For example, Delegate Duval stated that the provision "does not change the law at all." XXXVI Constitutional Convention, Verbatim Transcripts, 112th day, p. 127.
Speaking of the provision, Delegate Gravel stated:
"This does not prohibit the legislature from doing what it has already done and I think this is very importantright now there's a law on the statute books that authorizes municipalities to define gambling in a manner different from the manner that it's defined in Article 90 of the Criminal Code. This could not in any way adversely effect that right of the legislature." XXXVII, 113th day, p. 26.
The same delegate later stated:
"Well, I'll have to answer you the same way I answered Mr. Kean. If you have the same problem, my answer to you is the same as the answer I gave to him that this sentence mandates the legislature to define and prohibit commercial gambling. It does not prohibit the legislature from defining gambling otherwise, or from authorizing local government authorities to define gambling on a different basis which they presently do." Id. p. 27.
For other statements that Article 12, Section 6 of the 1974 Constitution was not intended to change the law, see XXXVII, Verbatim Transcript, 113th day, pp. 4, 8, 9, 13, 19-22, 24-35, 55-57.
The general thrust of the new constitution, especially Article VI, was to strengthen municipal home rule. See Kean, Local Government and Home Rule, 21 Loy.L.Rev. 63. If the delegates had intended to divest municipalities of substantial powers, they would have undoubtedly used specific language.
The effect of the present decision is not limited to Shreveport, or even to home rule cities like it. It also effects non-home rule municipalities with a population of one hundred thousand or less. Although the Legislature has expressly authorized these smaller municipalities to define gambling (LSA-R.S. 33:4851.1), this decision has the effect of invalidating that statute.
The case of Bradford v. City of Shreveport, La., 305 So.2d 487 (1974), cited generally by the majority, dealt with an entirely different issue under a different portion of the Home Rule Charter. Clearly, it has no application to the issue in the present case.
For the reasons assigned, I respectfully dissent.
NOTES
[1] Thus, unlike municipal governments authorized solely by legislative act, the home rule charter of Shreveport and other home-rule subdivisions were founded upon constitutional grant, in many respects independent of subsequent legislative modification or restriction.
[2] Article 6, Section 4 declares: "Every home rule charter or plan of government existing or adopted when this constitution is adopted shall remain in effect and may be amended, modified, or repealed as provided therein. Except as inconsistent with this constitution, each local governmental subdivision which has adopted such a home rule charter or plan of government shall retain the powers, functions, and duties in effect when this constitution is adopted. If its charter permits, each of them also shall have the right to powers and functions granted to other local governmental subdivisions."
[3] Amendments to existing home rule charters, as well as home rule charters adopted pursuant to the new constitution's general provisions, were authorized to include "the exercise of any power and performance of any function necessary, requisite, or proper for the management of its affairs, not denied by general law or inconsistent with this constitution." Article 6, Section 5(E). (Italics ours.)
[4] Section 2.04 of the Charter, entitled "Powers Relating to the Preservation of the Public Peace, Good Order, Safety, Health, and Morals," provides, in pertinent part:

"In addition to the powers granted by other sections of this plan of government, the city shall have power:
* * * * * *
(d) To make all necessary regulations for the prevention and prohibition of gaming for money or property, by any method or device, . . ."
A basis under the 1921 constitution for police regulations of this nature, where the home rule authorization is silent, is found at Article 14, Section 40(d) (1952).
[1] See LSA-Const. (1921), art. 14, Sect. 37.