357 So.2d 1078 (1978)
CITY OF SHREVEPORT
v.
Lewis C. CURRY.
CITY OF SHREVEPORT
v.
James H. BURKETT.
Nos. 60483 and 60484.
Supreme Court of Louisiana.
March 27, 1978.
Rehearing Denied on Modification of Judgment May 19, 1978.
*1079 John Gallagher, City Atty., Charles C. Grubb, Asst. City Atty., for plaintiff-appellant.
Claudius E. Whitmeyer, Neil T. Erwin, Shreveport, for defendants-appellees.
CALOGERO, Justice.
Defendants Lewis Curry and James Burkett were charged by separate affidavits in the City Court of Shreveport with violating Section 14-19 of the Shreveport City Code by frog gigging[1] on Cross Lake[2] out of season. At trial, defendants admitted that they did frog gig on Cross Lake in the month of August, but contended that the city ordinance under which they were being prosecuted was unconstitutional. The judge held the ordinance unconstitutional, the city appealed directly to this Court, and the cases were consolidated for our review. La.Const. art. 5, § 5(D)(1).
The ordinance in question, Section 14-19 of the Shreveport City Code,[3] provides in pertinent part as to activities on Cross Lake:
"BE IT FURTHER ORDAINED, That the following recreational activities being dealt with in this section are fishing, boating, water skiing, hunting and frog gigging. Each activity mentioned above is subject to regulations as follows:
* * * * * *
D. HUNTING

* * * * * *
4. Frog gigging will be permitted within the 172 foot contour line mean gulf level from June 1 through June 30 using only approved mechanical devices and in accordance with existing State laws. Frog gigging will not be permitted where it conflicts with the exclusive right to use of property within the 172 foot contour line mean gulf level by the abutting property owners.
* * * * * *
[A]ny person who shall violate the provisions of this ordinance shall upon conviction be fined not less than $10.00 nor more than $200.00, or be imprisoned not less than 10 days, nor more than 60 days, or shall suffer both fine and imprisonment at the discretion of the court."
Defendants argue that the ordinance is unconstitutional in that the city may not legislate in the area of frog gigging because the state has preempted that field, the ordinance expressly conflicts with state law on the subject, and the ordinance is not a reasonable exercise of the police power. The trial judge found the ordinance to be an unreasonable exercise of the city's police power and held it unconstitutional.
At the outset we note that while the ordinance provides a penalty for violation of its provisions, and while it reflects that the activity of frog gigging is subject to the regulation that it will be permitted during June, the ordinance does not pronounce that frog gigging during months other than June is prohibited. Normally in interpreting a criminal statute it is not appropriate to apply an inference that conduct not covered by the terms of the statute is criminal. See La.R.S. 14:3; State v. Gyles, 313 So.2d 799 (La.1975); In re Buquet, 184 So.2d 288 *1080 (La.App. 1st Cir. 1966). While the city must have intended to prohibit frog gigging except during June, the ordinance does not unmistakably so declare. In light of our findings hereinafter, however, we find it unnecessary to resolve in this instance whether the statute fails to proscribe the conduct with which these defendants are charged.
Defendants argue that the statute is invalid because it conflicts with state law on the taking of frogs and because the state has preempted the field. That statute, Revised Statute 56:330,[4] essentially provides that frogs may not be taken during April and May, frogs may be taken in open season, and frogs may be taken by means of mechanical devices so long as these do not puncture the frog's skin or redden its meat. Although that statute does not specifically delineate the closed season, a general definitional statute, R.S. 56:311(6), defines closed season as "that period of time of a calendar year not specifically included in the open season." Although there is no express statutory definition of the term open season, the obvious import of the state statutory scheme is that during the months of April and May there is a closed season on frogs, while during the other ten months of the year there is an open season on frogs. Because the Shreveport ordinance purports to allow the taking of frogs by mechanical device in June but disallows taking them in this manner during the other eleven months of the year, there is a very substantial argument that the city ordinance, because it would disallow the taking of frogs by mechanical device January through March and July through December, conflicts with the state statute which would allow the activity during those months.
Central to the resolution of this issue is the principle that a municipal ordinance which goes farther in its prohibitions than a state statute is valid so long as it does not forbid what the state legislature has expressly or implicitly authorized. National Food Stores of Louisiana, Inc. v. Cefalu, 280 So.2d 903 (La.1973); Broussard v. Ketchens, 231 La. 508, 91 So.2d 775 (1956). Consistent with this principle, we held in City of Shreveport v. Kaufman, 353 So.2d 995 (La. 1978), that the Shreveport city charter may not, without offense to the Louisiana Constitution of 1974, grant authority to the municipality to punish conduct which is not proscribed by the State Legislature's definition of the same crime.[5]
Therefore, if we believed that the ordinance in question were one which was intended to regulate the taking of frogs, we would be inclined to hold that the Shreveport ordinance proscribes what the state statute would permit (frog gigging with a mechanical device which does not puncture the frog's skin from January through March, and July through December) and we would find, therefore, that the area had been preempted by state law on the subject. We believe, however, that the thrust of the Shreveport ordinance is not to prohibit the taking of frogs but to prohibit people from operating a frog gig, the apparent intent of the city being to discourage this type of human activity upon or near the edge of *1081 Cross Lake. We have this belief because the city makes no argument at all that the ordinance attempts to protect the frog or regulate the proliferation of frogs, and we can find no logical relationship between frog gigging as regulated by the ordinance and the life cycle or activity of frogs. For this reason we conclude that the question in this case is not one of preemption or conflict with a state statute, and we decline to make a holding on this issue.
As we see it, the real issue in the case is whether the municipal ordinance in question is a reasonable use of the police power. The trial judge held that it was not, and we agree with his ruling.
Police power is the power of a governmental body to regulate reasonably the actions of its individual citizens in order to protect or promote the public health, safety, morals, peace or general welfare. Mugler v. Kansas, 123 U.S. 623, 8 S.Ct. 273, 31 L.Ed. 205 (1887); City of Lafayette v. Justus, 245 La. 867, 161 So.2d 747 (1964); LaFave and Scott, Criminal Law § 17, p. 117 (Hornbook series, 1972).
The power of the federal government or of a state to pass laws regulating persons and property within its boundaries is an inherent power which stems from the theory that when persons choose to live in groups they must give up some individual freedom for the good of the group. However, the government does not have unlimited authority to regulate the lives of its citizens, but may pass only those laws which are reasonably related to protection or promotion of a public good such as health, safety, or welfare. A law which exceeds the bounds of reasonableness violates due process of law. Mugler v. Kansas, supra; Nomey v. State, 315 So.2d 709 (La.1975); Louisiana State Bd. of Optom. Exam. v. Pearle Optical, 248 La. 1062, 184 So.2d 10 (1966); City of Lafayette v. Justus, supra; LaFave and Scott, supra, at §§ 18, 20.
The City of Shreveport has the authority under its constitutionally authorized home rule charter[6] to exercise the police power over activities upon Cross Lake. See City of Shreveport v. Kaufman, supra. The issue is whether the frog gigging ordinance which has been passed in the exercise of that authority has for its object the prevention of some offensive conduct or the preservation of the public health, safety, morals, peace, or general welfare. The test to be applied in determining whether a particular ordinance is a reasonable exercise of a city's police power is whether the regulation is really designed to accomplish one of these purposes properly falling within the scope of the police power. Nomey v. State, supra; State v. Birdsell, 235 La. 396, 104 So.2d 148 (1958); Schwegmann Bros. v. Louisiana Board of Alcoholic Beverage Control, 216 La. 148, 43 So.2d 248 (1949); State v. Blake, 170 La. 175, 127 So. 592 (1930). Stated another way, the test of reasonableness is whether there is a real and substantial relationship between the regulation imposed and the prevention of injury to the public or the promotion of the general welfare. Reynolds v. Louisiana Board of Alcoholic Beverage Control, 248 La. 639, 181 So.2d 377 (1965); City of Lafayette v. Justus, *1082 supra. Enforcement of the law must clearly and appropriately promote the public welfare in a degree that is perceptible and clear. Schwegmann Bros. v. Louisiana Board of Alcoholic Beverage Control, supra. While a city ordinance, like a state statute, is presumed to be constitutional and the party who attacks the law's validity has the burden of proving that the ordinance is unconstitutional, the fact remains that when the ordinance is examined it will fall if there is no real and substantial relationship between the regulation and the protection or promotion of the general welfare. Everhardt v. City of New Orleans, 253 La. 285, 217 So.2d 400 (1969); Reynolds v. Louisiana Board of Alcoholic Beverage Control, supra; Hi-Lo Company v. City of Crowley, 274 So.2d 757 (La.App. 3rd Cir. 1973).
When we examine the Shreveport ordinance in light of these principles, we note that the provision regulating the frog gigging does not have city wide application. It applies only within the 172 foot contour line mean gulf level in and around Cross Lake water reservoir. It does not proscribe[7] frog taking generally but only frog gigging, a specific means of taking frogs by a mechanical device. Frogs are frequently taken by hand by experienced frog hunters, often with the use of an immobilizing bright light. Thus the ordinance attempts to proscribe frog taking in only one area of the city, and even in that area, the law purports to restrict only one method of such frog taking.
Although Cross Lake is the source of Shreveport's major water supply, there is no argument that the limitation on frog gigging in any way protects the water supply. In fact, one of the announced purposes of the city ordinance at issue here is to allow recreational use of the lake. Section 5 of the ordinance relates this councilmanic determination, as follows:
"BE IT FURTHER ORDAINED, That the City of Shreveport, Louisiana, having determined that the use of the Cross Lake reservoir by the general public for boating, fishing, hunting and other recreational activities will not be in conflict with the operation and maintenance of the reservoir for its primary purpose.. . ."
In that regard, Section 6 permits fishing from daylight to 10 p. m. daily from April 1 to September 30, with fishing daylight to dark other times during the year, boating during these same times as relate to fishing, water skiing generally during daylight hours from May 15th to September 30th, hunting on the waters of Cross Lake "in accordance with federal and state laws," and duck hunting and construction of duck blinds within certain limitations.
Just what purpose relative to the public health, morals, peace or general welfare is served by prohibiting frog gigging eleven months during the year is not made apparent by the barren record before us. Moreover the ordinance itself offers no suggestion for the eleven months proscription of frog gigging, although the preamble to the ordinance does relate that one of the purposes of the ordinance is to prevent the commission of nuisances upon the lake and in the buildings along its shoreline. The record does not show that frog takers or frog giggers who use mechanical devices constitute a nuisance, and we are not convinced that there is a sufficient distinction between this type of nocturnal activity and other allowed nocturnal activities to warrant proscription of frog gigging eleven months of the year.
The sole basis of the city's argument that the ordinance is reasonable is that the sport of frog gigging is done in small boats at night near the shoreline. These nocturnal activities on Cross Lake, it is urged, are legitimately forbidden by the city because the city has full and plenary power over the lake and its environs, the ordinance is presumed constitutional, and local concerns prompted the passage of the ordinance. But there is no argument advanced, and we can conceive of none, to differentiate the nocturnal activity of frog giggers in and *1083 around the lake as opposed to the activity of other boaters and hunters who can permissibly under the ordinance enjoy their sport at night and near the shoreline under certain conditions. Boating is permitted from daylight to dark every month and to as late as 10:00 p. m. during some months, without limitations near the shoreline. Fishing is prohibited within one hundred feet of boat houses, but allowed along the shoreline. Water skiing is permitted on the lake. Hunting is permitted on the lake in accordance with federal and state laws. No suggestion is made by the city which demonstrates the reasonableness of prohibiting frog gigging while other recreational activities such as those mentioned above are permitted at nighttime (until 10 p. m. in some cases) along the shoreline.
For these reasons, we find that the Shreveport ordinance which proscribes frog gigging bears no real and substantial relationship to the prevention of injury to the public or the promotion of the general welfare. Reynolds v. Louisiana Board of Alcoholic Beverage Control, supra; City of Lafayette v. Justus, supra. The frog gigging ordinance does not have for its object the preservation of the public health, safety, peace or general welfare. Nomey v. State, supra. Thus we conclude that the ordinance in question is not a reasonable exercise of the police power, and as such it violates defendants' right to due process of law.
We affirm the action of the trial judge in holding Section 6(D)(4) of Ordinance No. 40 of 1964, a portion of Section 14-19 of the Shreveport City Code, unconstitutional. We note that the judge in making his ruling actually declared invalid the entire section of the city code which deals with Cross Lake, Section 14-19. Thus, his ruling was inadvertently overbroad since only that part of the ordinance relating to frog gigging was at issue in the case. Thus, we reverse his judgment as to all other parts of Section 14-19 of the Shreveport City Code.

Decree
Accordingly, we affirm the judgment of the trial court which held unconstitutional Section 6(D)(4) of Ordinance No. 40 of 1964 of the Shreveport City Code, but we reverse his judgment as all other portions of Section 14-19 of the Shreveport City Code.
AFFIRMED AS AMENDED.
SANDERS, C. J., and MARCUS and DENNIS, JJ., dissent.

ON MODIFICATION OF JUDGMENT
PER CURIAM.
The City of Shreveport has applied for a modification of judgment relating to the code and ordinance numbers in the statute.
The trial judge had declared unconstitutional all of Section 6 of Ordinance No. 40 of 1964, although only a portion of that ordinance, namely Section 6(D)(4), was actually at issue in the case. Only Section 6(D)(4), which is the frog gigging portion of the ordinance, has been codified as Section 14-19 of the Shreveport City Code.
The City correctly points out that our opinion mistakenly uses incorrect numbers to refer to the frog gigging provision. We intended to reverse the ruling of the trial judge as to subsections of the ordinance which did not deal with frog gigging, but to affirm his ruling as to the unconstitutionality of the frog gigging provision. Therefore, our decree is modified to read as follows:

Decree
Accordingly, we reverse the judgment of the trial court in that it declared unconstitutional all portions of Section 6 of Ordinance No. 40 of 1964 of the City of Shreveport other than Section 6(D)(4). We affirm the judgment of the trial court in that it declared unconstitutional Section 6(D)(4) of Ordinance No. 40 of 1964 (codified as Section 14-19 of the Shreveport City Code).
AFFIRMED AS AMENDED AND MODIFIED.
SANDERS, C. J., having dissented from the judgment, concurs in this Per Curiam since the motion for rehearing was limited to this modification.
NOTES
[1] Frog gigging is a method of taking frogs with a mechanical device, an activity accomplished, pertinent to the case under consideration, while in a boat close to the shore line. The device is essentially a grabber triggered by a spring lever. It grabs or "gigs" the frog but does not puncture the frog's skin or redden its meat.
[2] Cross Lake was annexed by the City of Shreveport by Ordinance No. 108 of 1963. Previously, by Act 31 of 1910, the State Legislature had granted to the city title of the bed of Cross Lake for the purpose of enabling the city to provide a wholesome water supply.
[3] The frog gigging provision was originally enacted as Ordinance No. 40 of 1964, section 6(D)(4). That provision is a part of Section 14-19 of the Shreveport City Code which regulates activities upon and around Cross Lake.
[4] Louisiana Revised Statute 56:330 provides in full as follows:

"Bullfrogs and lagoon frogs may not be taken during the months of April and May. Frogs may be taken in open season with the aid of a jacklight or any other visible light and by means of mechanical devices known as frog catchers, provided these do not puncture the skin or redden the meat of the frog. No person shall take frogs by means of spears or other devices which puncture the skin or redden the meat of the frog. No person shall carry or have in his possession any shotgun, rifle, or firearm while taking or hunting frogs during the nighttime. A person may take any species of small frogs known variously as greenfrogs, grassfrogs, leopardfrogs, springfrogs, etc., for scientific, educational or for propagating purposes regardless of size, but not for food or sale. Selling of bullfrogs and lagoon frogs is permissible during any part of the year."
[5] The Kaufman case dealt with a Shreveport gambling ordinance which would punish gambling not conducted as a business. The State Legislature, acting pursuant to Article 12, Section 6 of the 1974 Constitution which states that gambling shall be defined by the legislature, proscribes gambling only when it is conducted as a business. R.S. 14:90; Ordinance of the City of Shreveport, Section 21-30.
[6] The home rule charter of the City of Shreveport was first authorized by Article 14, § 37 of the Louisiana Constitution of 1921, and was continued in existence by Article 6, § 4 of the Louisiana Constitution of 1974. The city thus can exercise the police power over all its territory, including Cross Lake. The specific charter provision which purportedly authorizes the ordinance in question, Section 2.03(u), grants the city the power

"To make all necessary regulations to protect the water supply of the city from pollution and other damage, and to exercise full and unlimited police power over the bed and waters of Cross Lake and for a distance of five thousand feet from the meander contour line which extends to the one hundred and seventy-two foot mean gulf level line as well as over the streams and tributaries of said lake for the same distance, and to pass any and all rules, regulations and ordinances deemed to be necessary for these purposes; and the city shall have the right and authority through its board of health, public safety department, public utilities department or otherwise, to inspect all of said property and the drainage area of said Cross Lake, and to enforce its ordinances and regulations by fine or imprisonment through the proper courts of the state." (emphasis supplied)
[7] We assume only for purposes of this discussion that the ordinance validly proscribes frog gigging in all months except June, without so holding. See our discussion infra.