## STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CA 19-417

**KEITH KISHBAUGH**

**VERSUS**

**THE CITY OF LAFAYETTE GOVERNMENT, ET AL.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20192137 A
HONORABLE JOHN  DAMIAN TRAHAN, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## SYLVIA R. COOKS

## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, John D. Saunders, and D. Kent Savoie, Judges.

**AFFIRMED; MOTION TO STAY DENIED.**

SAUNDERS, J., dissents and assigns reasons.

**Stephen J. Oats**

Lawrence E. Marino
Oats & Marino
100 E. Vermilion
Gordon Square, Suite 400
Lafayette, LA 70501
(337) 233-1100
COUNSEL FOR DEFENDANT/APPELLEE:
    Louis J. Perret, Lafayette Clerk of Court

Carey Thompson Jones
Emily G. Andrews
Asst. Attorney General
Department of Justice
P.O. Box 94005
Baton Rouge, LA 70804
(225) 326-6000
COUNSEL FOR INTERVENOR/APPELLANT:
    Kyle Ardoin, as La. Secretary of State

Larry Lane Roy
Brown Sims
600 Jefferson St., Suite 800
Lafayette, LA 70501
(337) 484-1240
COUNSEL FOR PLAINTIFF/APPELLANT:
    Keith Kishbaugh

Michael Dean Hebert
Paul David Escott
Becker & Hebert
201 Rue Beauregard
Lafayette, LA 70508
(337) 233-1987
COUNSEL FOR DEFENDANT/APPELLEE:
    Lafayette City-Parish ConsolidatedGovernment
    The City of Lafayette
    Lafayette Parish Government

Steven T. Ramos
Andrus, Boudreaux, Landry & Coussan
1301 Camellia Blvd, Ste 401
Lafayette, LA 70508
(337) 984-9480
COUNSEL FOR DEFENDANTS/APPELLEES:
    Daniel Gillane
    Deborah Amy
    Harold Bernard, Jr.
    Dennis Sullivan
    Jane Sawvel
    Bruce Sawvel

**Travis J. Broussard**
**Gary McGoffin**
**Durio, McGoffin, Stagg & Ackermann**
**220 Heymann Boulevard**
**Lafayette, LA 70503**
**(337) 233-0300**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Jane Sawvel**
    **Bruce Sawvel**
    **Dennis Sullivan**
    **Deborah Amy**
    **Harold Bernard, Jr.**
    **Daniel Gillane**

**Cooks, Judge.**

Plaintiff, Keith Kishbaugh, filed suit against the City of Lafayette Government, the Parish of Lafayette Government, and the Lafayette City-Parish Consolidated Government, (collectively Lafayette City-Parish), challenging the constitutionality of an ordinance that sought to cure deficiencies in certain city and parish council district descriptions set forth in the recent 2018 amendment to the Lafayette City-Parish Consolidated Government Home Rule Charter. Along with its answer, Lafayette City-Parish filed a reconventional demand, seeking a declaration that the ordinance was a valid reapportionment of the council districts. The Secretary of State subsequently intervened as a plaintiff, and several affected residents intervened as defendants (residents/intervenors).[1]

After a bench trial on the merits, the trial court found in favor of Lafayette City-Parish and the residents/intervenors, denying the claims of Plaintiff and the Secretary of State and dismissing, with prejudice, their petitions. The trial court denied as moot all remaining claims and demands not addressed in the judgment.

Finding Plaintiff and the Secretary of State failed to prove that the ordinance was not a valid reapportionment, we affirm the judgment of the trial court.

I.

## **ISSUE**

The validity of the Charter is not contested on appeal.[2] The sole issue presented for this court's review is:

---

[1] Deborah Amy, Dennis Sullivan, Daniel Gillane, Bruce Sawvel, Jane Sawvel, and Harold Bernard are all "elector[s] of the City of Lafayette and Parish of Lafayette, domiciled and registered to vote in Precinct 74," in the portions of which were omitted in the council district descriptions at issue herein.

[2] Plaintiff did not attack the validity of the new Home Rule Charter. The Secretary of State has not assigned as error the issue involving the validity of the charter for our review. Even if assigned, the law provides that: "An action contesting an election submitting a proposition to the voters . . . shall be instituted not later than 4:30 p.m. of the thirtieth day after the official promulgation of the results of the election." La.R.S. 18:1405(D). A request to invalidate the

Whether the trial court was correct in failing to find that both the Lafayette Home Rule Charter and the State Constitution mandate that any Charter amendment must be voted on by the people and that the amendment presented must match that put into effect by local government[?]

The Secretary of State sets forth five assignments of error:

(1)    The trial court committed legal error by concluding that Lafayette City-Parish Ordinance No. O-042-2019, adopted by the Council but not submitted to the electors of the City and Parish of Lafayette, was an effective and valid amendment of the City Parish Home Rule Charter.

(2)    The trial court erred as a matter of law in determining Lafayette City-Parish Ordinance No. O-042-2019 to constitute a reapportionment of the voting population of the City and the Parish of Lafayette in advance of the first election for council members under the Charter Amendment, rather than an ordinance to correct the deficient descriptions of city and parish election districts in the Lafayette City-Parish Charter Amendment that was ratified by the voters on December 8, 2018.

(3)    The trial court misapplied the legal principles that give courts the authority to reform a legal instrument to accord with the intent of the parties when clerical errors are found therein.

(4)    The trial court erred as a matter of law by resorting to the intent of the City-Parish Council to allow for reformation of the election provisions of the Charter Amendment by ordinance.

(5)    The trial court erred in allowing Michael Hefner to testify as an expert witness in this case when Mr. Hefner had a direct stake in protecting his own reputation and work by testifying favorably to the Lafayette City-Parish.

II.

**FACTS AND PROCEDURAL HISTORY**

In 1996, the Lafayette City-Parish Consolidated Government Home Rule Charter (Current Charter) took effect, under which the governmental functions of the City of Lafayette were consolidated with the governmental functions of the

---

charter would constitute a collateral attack upon December 8, 2018 election, the official results of which were promulgated on December 18, 2018. Plaintiff's petition filed, on April 5, 2019, would have been prescribed on its face. Therefore, the only timely filed action before the trial court was the challenge to the constitutionality of the ordinance.

Parish of Lafayette. On December 8, 2018, a majority of voters approved an amendment to the Current Charter (Amended Charter), abolishing the Lafayette City-Parish Council and replacing it with a separate Lafayette City Council and Lafayette Parish Council. Relevant herein, the textual descriptions and boundaries of the Lafayette Parish Council districts and the Lafayette City Council districts were set forth in the Amended Charter, but neither the textual descriptions nor boundaries of the council districts appeared on the ballot.

After ratification and promulgation of the Amended Charter, the Registrar of Voters discovered errors in the district descriptions in that some portions of an existing precinct were inadvertently omitted, effectively disenfranchising three hundred and thirty voters, while some voters were included in more than one district. In March 2019, the Lafayette City-Parish Council attempted to cure the deficient descriptions by adopting Ordinance No. O-042-2019 (Ordinance) to include the omitted portions and voters residing therein and to correct the misidentified precincts and districts.

While the bulk of the Amended Charter provisions would not go into effect until after the first council members elected under the Amended Charter took office, those provisions necessary to carry out the elections became effective upon promulgation, which occurred on December 18, 2018. One such transitional provision, Section 8-01 of the Amended Charter, provides:

> Council districts for the election of the first City Council members and Parish Council members for the elections authorized by Section 8-13(D) of this charter shall be as follows, and shall remain as follows until changed by reapportionment:

> [City Council Districts and Parish Council Districts are then described by precinct.]

Another transitional provision, Section 8-13(D) of the Amended Charter, mandates, in part: "The first election for City Council members and Parish Council members

3

whose positions are established by the amendments to this charter shall be held at the same time as the primary and general elections for the governor of Louisiana in 2019."

On April 5, 2019, Plaintiff filed suit challenging the constitutionality of the Ordinance. Plaintiff alleged that the Ordinance amounted to an amendment to the Amended Charter prohibited by La.Const. art. 6, §5(C). He petitioned for declaratory and injunctive relief to prevent the Ordinance from going into effect for the first election under the Amended Charter. The Secretary of State intervened in the suit similarly alleging the unconstitutionality of the Ordinance. He also sought declaratory and injunctive relief with respect to the Ordinance.

With its answer, Lafayette City-Parish filed a reconventional demand, generally seeking a declaration that the Ordinance was a valid reapportionment of the council districts. Lafayette City-Parish also sought an order directing the Secretary of State as well as the Clerk of Court of Lafayette Parish to perform their respective ministerial duties in regards to the city-parish council election provided for in the Amended Charter. Louis J. Perret, the acting Clerk of Court, was consequently made a defendant-in-reconvention. Six residents of the City of Lafayette also intervened as defendants, petitioning for affirmative relief in the form of a declaratory judgment (1) declaring the Ordinance legal and valid, or alternatively (2) declaring the deficiencies were merely typographical errors that should be disregarded or severed with the corrections to be made by the Lafayette City-Parish Council or the court.

The matter proceeded to a bench trial on May 8, 2019, wherein Michael Hefner, an experienced demographer and reapportionment expert, testified

4

regarding the origins of the discrepancies.[3] Charlene Menard, the Registrar of Voters, also testified as to her discovery of the discrepancies.

Mr. Hefner explained that Lafayette City-Parish originally retained him to draw the new parish and city council districts proposed in Ordinance O-121-2018 (amending ordinance), which detailed the amendments to the Current Charter. Between the time of the introduction of the amending ordinance on July 10, 2018, and the scheduled time for its final adoption on August 7, 2018, there was substantial public debate regarding the appropriate boundaries of the new council districts. In light of the numerous suggestions and instructions as to how the districts should be drawn, Mr. Hefner developed a number of hypothetical plans for discussion purposes. Ultimately, the Lafayette City-Parish Council decided to implement maps known internally to Mr. Hefner as "Plan 2" for the Lafayette Parish Council districts and "Plan 2D" for the Lafayette City Council districts.

As reflected in the minutes of the Lafayette City-Parish Council meeting of August 7, 2018, these maps "could be viewed in the Alcove just outside the door." A summary of the proposed amendments to the amending ordinance stated, in pertinent part: "Section 8-01 revises descriptions of City Council districts to match most current City Council five-district map." Mr. Hefner testified that the "maps" referred to in these minutes are the "Plan 2" and "Plan 2D" maps he prepared and transmitted to the Lafayette City-Parish Council. These maps did not exclude any area from a council district or include any area in more than one council district. They were also posted on the Lafayette City-Parish official website and publicized

---

[3] Although the Secretary of State challenges the trial court's acceptance of Mr. Hefner as an expert, we find no merit to this challenge as the trial court's oral reasons show that the trial court, within its broad discretion, merely relied on the factual accounts of Mr. Hefner's testimony as well as Ms. Menard's testimony in concluding the discrepancies were clerical error. The trial court looked to the charters and Louisiana law in holding that reapportionment "is always a legislative function[.]"

across local media outlets. The textual descriptions adopted by the Lafayette City-Parish Council, however, did not match these maps due solely to Mr. Hefner's admitted error in failing to use the correct maps when drafting the textual descriptions.

Mr. Hefner also explained that the unintended omission of three hundred and thirty voters from Precinct 74 resulted from the inadvertent inclusion of a dividing line instead of the original precinct boundary. Ms. Menard further explained that, according to the description in the Amended Charter, voters in Precinct 34 would be able to vote twice. She also testified that she discovered the discrepancies when she tried to "follow the verbiage with the map." The map, she explained, "was printed through . . . the GIS Division of the Lafayette Consolidated Government." The testimony further revealed that the revised textual descriptions Mr. Hefner drafted for the Ordinance do correspond to the maps.

After presentation of the evidence, the trial judge dismissed the claims of Plaintiff and the Secretary of State, reasoning:

> The issues in the case are primarily questions of law. And I think probably on appellate review, which I assume there will be, there will be a de novo review of what are the legal issues in the case. But I think there are some facts that – fact-findings that I need to make, and they influence my decision in a couple of ways.
>
> First, there wasn't anything nefarious about the mistakes being made, it was just an innocent error; a prior iteration of the city map was used instead of the latest one.
>
> I also find that the intent of the council was to have the districts and the precincts conform to Parish Map 2 and City Map 2D. What councilperson would have intentionally left out 330 voters or permitted some folks to vote twice?
>
> So we get to the ordinance. The way the mistakes happened in the textual descriptions of the precincts leads me to conclude that those mistakes are purely clerical. I mean, it was literally the substitution of an erroneous map for the correct one that caused these errors. The council passed the ordinance with reference to those maps.

6

The ordinance is entitled to a presumption of constitutionality under the law. The charter itself calls for a liberal construction of its terms. And the charter also reserves to the council the reapportionment power.

As always, the reapportionment power, the right to redraw district lines, is always a legislative function and never submitted to the electorate for a decision on those matters.

All of these things have convinced me that the plaintiff and the Secretary of State have failed to prove by clear and convincing evidence that the corrective ordinance violates either the constitution or the charter itself.

On May 16, 2019, the trial court signed the judgment denying the claims for relief sought by Plaintiff and the Secretary of State and dismissing, with prejudice, their claims. The trial court denied as moot all remaining claims and demands not addressed in the judgment. Both Plaintiff and the Secretary of State timely filed for appeal. The Secretary of State also sought expedited consideration, which this court granted, and requested a stay, which is presently before the court.

III.

**STANDARD OF REVIEW**

An appellate court reviews the factual findings of a trial court under the manifest error-clearly wrong standard of review. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). The trial court's legal conclusions on questions of law, however, are reviewed de novo. *City of Bossier City v. Vernon*, 12-78 (La. 10/16/12), 100 So.3d 301.

IV.

**LAW AND DISCUSSION**

"An ordinance, like a state statute, is presumed to be constitutional and the party attacking the ordinance has the burden of proving its unconstitutionality. An ordinance will be upheld if there exists a reasonable relationship between the law and the public good." *Theriot v. Terrebonne Parish Police Jury*, 436 So.2d 515, 520

7

(La.1983). "It is well settled that the burden of proving the unconstitutionality of an act or ordinance is by clear and convincing evidence." *Plaquemines Par. Civil Serv. Comm'n v. Plaquemines Par. Council*, 17-449, p. 6 (La.App. 4 Cir. 2/14/18), 241 So.3d 1040, 1045.

> The test to be applied in determining whether a particular ordinance is a reasonable exercise of a government's police power is whether there is a real and substantial relationship between the regulation imposed and the prevention of injury to the public or the promotion of the general welfare. *City of Shreveport v. Curry*, 357 So.2d 1078 (La.1978). While an ordinance is accorded a presumption of constitutionality, and the burden of proving invalidity rests with the challenging party, government does not have the unlimited authority to regulate the lives of its citizens and may only pass laws which are reasonably related to protection or promotion of a public good such as health, safety or welfare.

*Gilbert v. Catahoula Par. Police Jury*, 407 So.2d 1228, 1231 (La.1981).

No one disputes that the council district descriptions contained in Section 8-01 are textually deficient. The dispute is over the proper manner in which to cure the deficiencies, or rather, the constitutionality of the Ordinance through which the Lafayette City-Parish Council sought to cure the deficiencies.

Plaintiff and the Secretary of State seek to rebut the presumption of constitutionality accorded the Ordinance by arguing that it constitutes an amendment to the Amended Charter explicitly prohibited by La.Const. art. 6, § 5(C), which provides: "A home rule charter shall be adopted, amended, or repealed when approved by a majority of the electors voting thereon at an election held for that purpose." In opposition, Lafayette City-Parish and the residents/intervenors argue the Ordinance is merely a reapportionment of the council districts necessary to uphold the intent and will of the electorate.

The trial court reasoned that Plaintiff and the Secretary of State failed to carry their burden of proving by clear and convincing evidence that the Ordinance was an

unconstitutional amendment to the Amended Charter rather than a valid reapportionment. We agree.

Although the city and parish council districts are set forth in Section 8-01 of the Amended Charter, that same section provides for the reapportionment of the districts, explicitly stating that the districts "shall remain as follows until changed by reapportionment." Under Section 2-02 of the Current Charter, the authority to reapportion is vested in the council: "Following official publication of the federal census by the United States Bureau of the Census, the Council by ordinance shall, if necessary, alter, change or rearrange the Council district boundaries so as to provide for population equality among the districts as near as reasonably practicable." The language contained in Section 2-02 of the Amended Charter is identical, except it identifies the governing authorities as "the City Council and Parish Council[.]" Such authority is also granted to the council, as the governing body, under La.R.S. 33:1371 and 33:1411. In all these provisions, the council "shall" "by ordinance" reapportion the districts if there exists an inequity or inequality in population evidenced by a recent census.

Louisiana Revised Statutes 18:532(A) similarly grants to the governing authority of each parish the power to "establish precincts, define the territorial limits for which each precinct is established, prescribe their boundaries, and designate the precincts." This statute mandates that "[t]he governing authority of each parish shall by ordinance adopt the establishment and boundaries of each precinct[.]" Louisiana Revised Statutes 18:532.1(A) further allocates to the council, as the parish governing authority, the "authority . . . to change the configuration, boundaries, or designation of an election precinct. Any change so determined shall be adopted by ordinance of the parish governing authority."

9

While admittedly there are no charter or statutory provisions expressly authorizing reapportionment by ordinance to correct a textual, clerical error in the description of council districts, there are also no provisions that explicitly prohibit reapportionment by ordinance in such circumstances. Moreover, charter and statutory provisions mandate reapportionment by ordinance when inequity or inequality in population is evident and explicitly grant to the governing authority the power to establish and change precinct boundaries by ordinance. This court must decide then whether the Lafayette City-Parish Council's use of its reapportionment power herein was permissible under a fair and reasonable interpretation of the Current Charter and the Amended Charter.

By analogy, the following rules that apply to interpreting our constitution also apply to our interpretation of home rule charters:

> In construing a constitutional provision or amendment, a court should ascertain and give effect to the intent of both the framers of the amendment and of the people who adopted it. In carrying out this function, therefore, the court should consider the object sought to be accomplished by the adoption of the provision. Accordingly, effect should be given to the purpose indicated by a fair interpretation of the language employed, and the construction which effectuates, rather than that which destroys a plain intent or purpose of the constitutional provision.

*Bd. Of Comm'rs of Orleans Levee Dist. v. Dep't of Nat. Res.*, 496 So.2d 281, 298 (La.1986) (on rehearing)(citations omitted).

Section 8-09 of the Current Charter and the Amended Charter mandates that the charters "shall be liberally construed in aid of [their] declared intent which is to establish for the people" of the City of Lafayette, the Parish of Lafayette, and the Lafayette City-Parish Consolidated Government "effective home rule free from legislative interference as to the structure and organization of its local government, and with the power and authority to manage its local affairs." Pursuant to this language, we find a fair and reasonable interpretation of both charters would support

10

a liberal construction of the council's reapportionment power to uphold the intent of both the drafters of the Amended Charter and the people who adopted it.

As the trial court found, the evidence of record, namely the testimony of Mr. Hefner and the August 7, 2018 council meeting minutes, reasonably establishes that the Lafayette City-Parish Council intended for the textual description of the districts to comply with the maps published to the public. It was only a clerical error that resulted in the misidentification of certain precincts. No one disputes that the reapportioned districts comply with the published maps and equally apportion the population, whereas the textual descriptions neither comply with the maps nor equally or equitably apportion the population.

The intent of the majority of the electorate can also be surmised from the proposition they voted in favor of, namely to "abolish City-Parish Council, create the Lafayette City Council and Lafayette Parish Council, as governing authority for Lafayette City-Parish Consolidated Government; establish as governing authority, City Council for City of Lafayette and Parish Council for Parish of Lafayette." While the proposition unequivocally evidences an intent to abolish the Lafayette City-Parish Council and replace it with a separate Lafayette City Council and Lafayette Parish Council, the proposition does not in any fashion describe or refer to the districts from which the new council members would be elected. It is not reasonable to assume, therefore, that the electorate intended to amend the Current Charter to exclude three hundred and thirty voters from the language of the proposition, particularly when the maps published by the Lafayette City-Parish on its website did not contain the disenfranchising discrepancies at issue. Such an assumption also defies common logic and raises the question posed by the trial court as to who would intentionally omit three hundred and thirty voters, while allowing other residents to vote twice.

11

Therefore, we find that, under a liberal construction of the provisions of the Current Charter and the Amended Charter, the reapportionment at issue herein was a reasonable method whereby the Lafayette City-Parish Council, to whom such authority is granted, could remedy the textual, clerical discrepancies so to uphold the intent of the drafters and voters as well as the voting rights of the electorate.

Notably, our law even contemplates that, through inadvertence and error, unintended mistakes will arise in the drafting of laws. Louisiana Revised Statutes 24:253 grants to the Louisiana State Law Institute, in preparing the printer's copy of recent legislation, the authority to "[c]orrect manifest typographical and grammatical errors, and . . . [m]ake any other purely formal or clerical changes in keeping with the purpose of the revision." The supreme court has also long acknowledged that "clerical errors in the use of words or numbers in a statute may be recognized and corrected by the courts whenever necessary to carry out the manifest intention of the Legislature, as gathered from the context of the act." *State v. Rogers*, 148 La. 653, 658, 87 So. 504, 506 (1921). Thus, Louisiana statutory law and jurisprudence also recognize and support the use of various measures to correct clerical errors so to uphold the intent in the adoption and enactment of laws.

Taking all of this into consideration, we find there does exist a reasonable relationship between the Ordinance and the public good in that the Ordinance remedies the unintentional, clerical discrepancies consistent with the intent of both the drafters of the Amended Charter and the people who adopted it. We, therefore, find the Ordinance is constitutionally sound and was a proper exercise of the reapportionment power granted to the Council so as to uphold the intent of the drafters and the people. Accordingly, we find that the trial court did not err in concluding that Plaintiff and the Secretary of State failed to carry their burden of proving by clear and convincing evidence that the Ordinance was unconstitutional,

and we affirm the trial court's judgment. Finally, because the Ordinance properly remedies the discrepancies, all remaining issues are rendered moot, and we pretermit their discussion.

V.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed. The motion to stay is hereby denied as moot.

Costs of this appeal are assessed to the Plaintiff/Appellant, Keith Kishbaugh.

**AFFIRMED; MOTION TO STAY DENIED.**

KEITH KISHBAUGH

VERSUS

THE CITY OF LAYAFETTE GOVERNMENT, ET AL.

**SAUNDERS, JUDGE, dissenting.**

This case arises out of an amendment to the Lafayette City-Parish Consolidated Government Home Rule Charter (Amended Charter), ratified and promulgated in December 2018, that contained deficinecies in certain city and parish council district descriptions. At issue herein is the constitutionality of an ordinance adopted by the Lafayette City-Parish Council to cure these deficiencies. The majority finds the ordinance is a valid exercise of the council's reapportionment power. For the following reasons, I respectfully disagree.

"Just as the Constitution is the supreme law of the state, home rule charters are the supreme law of home rule charter jurisdictions, subordinate only to the constitution and constitutionally allowed legislation." *Montgomery v. St. Tammany Parish Gov't by & through St. Tammany Parish Council*, 17-1811, p. 7 (La. 6/27/18), __ So.3d __.[1] As a document founded on the will of the people, a home rule charter can only be amended "when approved by a majority of the electors voting thereon at an election held for that purpose." La.Const. art. 6, § 5(C). Once approved, an amendment becomes the prevailing law of the land, "to which all legislative acts and all ordinances, rules, and regulations of creatures of the legislature must yield." *Caddo-Shreveport Sales and Use Tax Comm'n v. Office of*

_____

[1] 2018 WL 3151290.

*Motor Vehicles Through Dep't Of Pub. Safety and Corr. of the State*, 97-2233, p. 6 (La. 4/14/98), 710 So.2d 776, 780.

Although the majority looks to the proposition presented to the voters so to ascertain the voters' intent, the voters did not adopt the proposition. Rather, they adopted the Amended Charter as proposed by the Lafayette City-Parish Council in Ordinance O-121-2018. The language of the Amended Charter in Ordinance O-121-2018, not the language of the proposition, is paramount and prevailing "to which all legislative acts and all ordinances, rules, and regulations of creatures of the legislature must yield." *Id.* By their vote, a majority of the electors evidenced their will and intention to amend their existing charter in accordance with the language proposed by Ordinance O-121-2018. The Amended Charter, therefore, as a document of the will of the people, cannot be amended without the approval of "a majority of the electors voting thereon at an election held for that purpose." La.Const. art. 6, § 5(C). Accordingly, I find the ordinance adopted by the Lafayette City-Parish Council must yield to the provisions of the Amended Charter as proposed by Ordinance O-121-2018 and adopted by a majority of the voters. I would, therefore, reverse the judgment of the trial court.

For the foregoing reasons, I respectfully dissent.